MARTHA COHEN *vs.* HENRY SIEGEL COMPANY.

Suffolk.    November 19, 1914. — February 25, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Evidence,* Admissions by conduct. *Negligence,* Of bailee for hire. *Bailment.*
*Practice, Civil,* Exceptions.

In an action by a woman for the loss of a fur coat which she had delivered to the
defendant as a bailee for hire to keep for her in cold storage, it could have been
found that the plaintiff delivered the fur coat and a muff to the defendant's
teamster who called for them, that on the evening of that day the plaintiff
was asked by telephone whether she had lost any furs, that the next morning
she went to the defendant's store and asked the man in charge of the fur
department whether her furs had been delivered, that he told her that the furs
were there, but with various excuses refused to allow the plaintiff to see them
in the cold storage room, that on the same day the plaintiff received from the
defendant a receipt for the furs naming a valuation which was not satisfac-
tory to her, that the next day the plaintiff went again to the defendant's store
and refused to accept the receipt because the valuation was too low and de-
manded the return of her furs, offering to pay for the short time they had been
there, but that neither the coat nor the muff were given to her, although the
man in charge told her that they would be returned to her as soon as the num-
bers were identified, making an excuse for the delay, that thereafter the plain-
tiff called at the store many times and demanded her furs but never received
them, that four months after the plaintiff gave her furs to the defendant's
teamster their loss for the first time was reported to the head of the defend-
ant's fur department, and that the plaintiff never was told that her furs were
missing until two months later, that afterwards "they told her they did not
have the coat and muff," that shortly after that the plaintiff brought her
action and that after the action was brought the muff was returned to the
plaintiff without any explanation. *Held,* that on this evidence the jury were
warranted in drawing the conclusions that the defendant's agent who made
the excuses to the plaintiff had tried to hide the real facts from her and that
he knew that he or some of his fellow servants were at fault in the matter,
and in drawing the further conclusion that the head of the defendant's fur
department, who failed to notify the plaintiff of the loss of her furs for two
months or to explain the way in which the muff was found, knew that his
people were at fault, and that consequently there was evidence of the defend-
ant's negligence, on which the plaintiff, who had not agreed to any valuation
of her fur coat, could recover the full value of the coat from the defendant
if she obtained a verdict.

A defendant, in arguing that the plaintiff should not have been allowed to go to
the jury, is not entitled to rely on any evidence which the defendant himself
introduced.

CONTRACT OR TORT for the loss of a fur coat entrusted to the defendant for cold storage. Writ dated December 4, 1912.

The second count was for an alleged conversion of the coat. The fourth count was as follows: "And the plaintiff further says that in consideration of the delivery by her to the defendant of certain valuable merchandise and in further consideration of the payment to the said defendant of a certain sum of money, the defendant undertook and agreed to receive, and did receive said merchandise, and did undertake to take due and proper care thereof; and the plaintiff avers that the defendant wholly regardless of its terms and undertaking took improper and bad care of said merchandise and through its negligence the said merchandise is lost to the plaintiff, to the great damage of the said plaintiff."

In the Superior Court the case was tried before *Wait,* J. The facts which could have been found in favor of the plaintiff upon the evidence are stated in the opinion. At the close of the evidence the defendant asked the judge to rule, among other things, that the plaintiff could not recover upon the second or upon the fourth count of her declaration. The judge refused to make these rulings.

The sixteenth ruling requested by the defendant, which is referred to in the opinion, was as follows: "16. If the defendant placed the plaintiff's goods in a steel vault, which was guarded by day and securely locked at night, to which only its employees could at any time have any access, and if it exercised a reasonable degree of care in selecting its employees who guarded or had access to the vault, it was exercising all the care which a reasonably careful owner of similar goods would have exercised."

The judge refused to make this ruling "in the form as requested and substantially charged that the burden of proof was on the plaintiff to establish that the defendant had failed to exercise the same degree of care with reference to these goods that a reasonably careful owner of similar goods would have exercised."

On the second count the jury returned a verdict for the defendant. On the fourth count the jury returned a verdict for the plaintiff in the sum of $800; and the defendant alleged exceptions.

*J. B. Studley,* for the defendant.

*S. L. Bailen,* for the plaintiff.

LORING, J. On the evidence before them the jury were warranted in finding the following to be the facts of the case. In April, 1912, the plaintiff called up the defendant on the telephone and asked it to send a wagon for a fur coat and muff of hers which she wished to have kept in cold storage. In consequence the defendant's teamster called at the plaintiff's house and took away the coat and muff. The defendant admitted that the coat and muff were delivered by the teamster to the person in charge of the department of its store in which furs were kept in cold storage. This was on April 23, 1912. In consequence of a communication by telephone which the plaintiff received in the evening of the same day she went the next morning to the defendant's store and saw there one Rosenthal. The defendant's evidence shows that Rosenthal was the first assistant in the fur department of the defendant company, was the agent of the defendant in direct charge of that department, and was the person authorized by the defendant to receive complaints as to the storage of furs. It appeared later in the evidence that what had been referred to as a communication by telephone was this: On the evening of the day when the furs were taken by the defendant's teamster somebody rang up the plaintiff on the telephone and asked her if she had lost any furs; she then began to question this person and he rang off. When the plaintiff called at the defendant's store (in consequence of what she had heard on the telephone the evening before) she saw Rosenthal and asked him if the fur coat had been delivered. Rosenthal at first said yes, and later said he would ring up the storage place and "ask if the furs were there." He did so and told the plaintiff that the furs were there. Thereupon the plaintiff said that she wanted to go and see the furs because she was nervous, because the coat was a present from her husband; Rosenthal then told her not to worry; that the tickets were mixed up and in a day or two she could call and see her furs. Thereupon she insisted upon seeing the furs then, but Rosenthal refused to let her do so. The plaintiff thereupon said to Rosenthal that she had been to the storage place many times before, and if the tickets were mixed she could identify her coat. But Rosenthal put her off and told her to call in a day or two and he would take her upstairs. On the same day but after this interview the plaintiff received from the defendant a receipt for her coat and

muff in which the two were valued at $300. The next day the plaintiff went again to the defendant's store, saw Rosenthal, and refused to accept the receipt on the ground that the valuation was too low; she then demanded the return of her coat and offered to pay whatever money they might "claim for the short time it was there." But neither the coat nor the muff was given to her. At this time Rosenthal told her to keep the receipt "for the purpose of identifying the number upon it and her goods would be returned to her as soon as the numbers were identified." At some of these interviews Rosenthal told the plaintiff that the trouble was that "they had green help and the tickets had been mixed up," and it would take some time to straighten matters out and they would let her know about it. After that she called at the store many times and demanded her coat, but did not receive it; and this lasted "over a period of several months." The plaintiff further testified that she never gave any valuation upon the merchandise and that she never agreed to permit the coat to stay with the defendant after receiving the telephone call on the first evening the coat was taken.

In August, 1912, the loss of these furs was reported to one Latz, the head of the defendant's fur department, and it was not reported to him until then. Lastly, although the defendant promised to let the plaintiff know, she never was told that her furs were missing until October, 1912.

The plaintiff also testified that "in the winter of 1912 they told her they did not have the coat and muff." We interpret this to mean, or the jury could have interpreted this to mean, that this was in the autumn of 1912. This action was brought on December 4, 1912. "Later, after suit was brought, the muff was returned to" the plaintiff, but no explanation ever was given by the defendant as to its statement made "in the winter of 1912," that it did not at that time have the muff, and as to the fact that "later" on the muff was returned to her.

On these facts the plaintiff proved that she had delivered the coat and muff to the defendant as bailee for hire, and that she never had agreed to the valuation put upon them by the defendant. Under these circumstances she was entitled, — on proving that the defendant was negligent, — (see *Willett* v. *Rich*, 142 Mass. 356) to recover the full value of the furs.

If the jury did find these facts, they were well warranted in drawing the conclusion that Rosenthal tried to hide the real facts from the plaintiff and from his superiors, and they were justified in drawing from the facts the further conclusion that Rosenthal knew that he or some of his fellow servants were at fault in the matter. Not only were the jury warranted in drawing the conclusion that Rosenthal knew that he or his fellow servants were at fault, but they were warranted in drawing the further conclusion from Latz's actions that he knew that his people were at fault. Latz gave the plaintiff no notice of the loss of her furs before October, although he knew of the loss in August, and no explanation ever was given of the way in which the muff was found after the plaintiff had been told that it was not in the defendant's possession.

It becomes necessary in view of the defendant's argument to state once more that a defendant, in arguing that the plaintiff has failed to make out a case, is not entitled to rely on evidence which he has introduced. The doctrine of *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314, ought to be familiar to the bar.

The sixteenth ruling asked for by the defendant is taken from a case where the defendant was a gratuitous bailee. *Smith* v. *First National Bank in Westfield,* 99 Mass. 605.

The defendant is right in its contention that (as was decided in *Childs* v. *American Express Co.* 197 Mass. 337) it is necessary for the party who has the burden of proof "to remove the cause from the realm of speculation." In our opinion that was done by the plaintiff in this case.

We find nothing in the other cases cited by the defendant which requires special notice.

The entry must be

*Exceptions overruled.*