JONES ET AL., RESPONDENTS, v. GREAT NORTHERN RAIL-WAY CO., APPELLANT.

(No. 5,214.)

(Submitted June 2, 1923. Decided July 10, 1923.)

[217 Pac. 673.]

*Bailment—Railroads—Loss of Baggage Through Negligence— Limiting Liability—When Bailor not Bound by Provision— Costs—Apportionment—When Unauthorized.*

Taxing Costs—Order not Appealable.
    1. An order denying a party costs is in effect an order taxing costs and not appealable, the ruling of the court being reviewable on appeal from the judgment.

Bailment—Railroads—Accepting Parcels for Safekeeping.
    2. Where a railway company accepts baggage from a traveler for safekeeping in its parcel-room, the transaction constitutes a bailment, the company acting as bailee and not as a common carrier.

Same—Loss of Property through Negligence—Measure of Damages.
    3. In the absence of a special agreement (not in contravention of law or public policy) between bailor and bailee limiting the liability of the latter for loss of property through his negligence, the measure of the bailee's liability for loss through his negligence is the reasonable value of the property.

Same—Parcel Check—Failure of Bailor to Read—Effect.
    4. Where a railway company accepts parcels in its parcel-room for safekeeping on payment of a charge therefor and issues a check on which a number of conditions are printed, among others one limiting its liability for loss, and the person receiving it does not have actual knowledge of the condition, he is not bound thereby

---

2. Liability of carrier for loss of property in check-room, see notes in 21 Ann. Cas. 97; 7 A. L. R. 1234; 18 L. R. A. (n. s.) 295; 29 L. R. A. (n. s.) 834.

unless his course of conduct is such as to lead it, as bailee, to believe that he assents thereto, the fact that he retains the check without objection not, as a matter of law, constituting such conduct, and in the absence of notice in the bailee that the check contains the provision he is not under any legal duty to read the inscription thereon.

Costs—When not Recoverable.

5.   Costs *eo nomine* being the creatures of statute, they are not recoverable unless provided for therein, courts being without discretion to allow them where not so provided for.

Same—Apportionment—When not Permissible.

6.   *Held,* that in the absence of statutory authorization therefor, costs may not be apportioned between plaintiff and defendant where the former had judgment on one of his causes of action and the latter had judgment on the other, section 9788, Revised Codes, allowing defendant costs applying only to an action wherein he recovers judgment and plaintiff is altogether unsuccessful.

*Appeal from District Court, Silver Bow County; Jos. R. Jackson, Judge.*

ACTION by Vernon R. Jones and another against The Great Northern Railway Company. Judgment for plaintiffs and defendant appeals. Affirmed.

*Mr. I. Parker Veazey, Jr., Mr. W. L. Clift, Mr. R. H. Glover* and *Mr. H. C. Hopkins,* for Appellant, submitted a brief; *Mr. Glover* argued the cause orally.

In a number of cases the exact question here involved has been decided, and the majority of these cases hold that where a railway company accepts parcels in its parcel-room on payment of a charge and issues a parcel check as a receipt therefor, the bailor or depositor is presumed to have knowledge of a condition or stipulation printed on the parcel check, limiting the railway company's liability to a sum stated thereon, and is bound by the provisions printed on the check. (*Van Toll* v. *Southeastern R. Co.,* 12 Q. B. (n. s.) 75, 142 Eng. Reprint, 1071; *Harris* v. *Great Western R. Co.,* L. R. 1 Q. B. Div. 515, 45 L. J. Q. B. (n. s.) 729; *Pratt* v. *Southeastern R. Co.,* 1 Q. B. 718, 66 L. J. Q. B. (n. s.) 418, 76 L. T. (n. s.) 465, 45 Week. Rep. 503; *Lyons* v. *Caledonia R. Co.,* 46 Scott L. R. 848; *Pepper* v. *Southeastern R. C.,* 17 L. T. (n. s.) 469; *Skipwith* v. *Great Western R. Co.,* 59 L. T. (n. s.) 520; *Henderson* v.

*Northeastern R. Co.,* 9 Week. Rep. (Eng.) 519, 4 L. T. (n. s.) 216; *Dorian* v. *Grand Trunk R. Co.,* Rap. Jud. 53 Quebec C. S. 106; *Terry* v. *Southern Ry.,* 81 S. C. 279, 18 L. R. A. (n. s.) 295, 62 S. E. 249; *Missouri Pac. R. Co.* v. *Fuqua,* 150 Ark. 145, 233 S. W. 926; see, also, *Taussig* v. *Bode,* 134 Cal. 260, 86 Am. St. Rep. 250, 54 L. R. A. 774, 66 Pac. 259.)

This court has heretofore recognized the doctrine that it is not necessary, in order to be binding, that terms and conditions should have been read by or known to the person to be bound thereby. This rule has been followed in the cases of *Rose* v. *Northern Pac. Ry. Co.,* 35 Mont. 70, 119 Am. St. Rep. 836, 88 Pac. 767; *Brian* v. *Oregon S. L. Ry. Co.,* 40 Mont. 109, 20 Ann. Cas. 311, 25 L. R. A. (n. s.) 459, 105 Pac. 489.

*Mr. N. A. Rotering,* for Respondent, submitted a brief and argued the cause orally.

Citing: *Parker* v. *Southeastern R. Co.,* 46 L. J. C. P. (n. s.) (Eng.) 768, L. R. 2 C. P. Div. 416, 36 L. T. (n. s.) 540, 25 Week. Rep. 564; *Healy* v. *New York C. & H. R. R. Co.,* 153 App. Div. 516, 138 N. Y. Supp. 287, and affirmed in 210 N. Y. 646, 105 N. E. 1086; *Dodge* v. *Nashville etc. Ry. Co.,* 142 Tenn. 20, 7 A. L. R. 1229, 215 S. W. 274; *Fraam* v. *Grand Rapids etc. Ry. Co.,* 161 Mich. 356, 21 Ann. Cas. 96, 29 L. R. A. (n. s.) 834, 126 N. W. 851.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In their complaint plaintiffs set forth two causes of action. In the first they claim damages for two coats lost through the alleged negligence of the defendant. In the second cause of action they allege that at Devils Lake, North Dakota, for a valuable consideration then paid by them, they deposited with the defendant in its parcel-room for safekeeping two traveling-bags with their contents; that thereafter on the same date they demanded the property, but the defendant failed and neglected to make return, to their damage in the sum of $610.

The answer of the defendant to the first cause of action is not material here. In answer to the second cause of action defendant admits the receipt of the property and its inability to return it. It alleges that the traveling-bags were received by it for storage under a special contract which limited its liability to $10 for the loss of each parcel.

Issues were joined by reply and the cause was tried with the result that a general verdict was returned in favor of defendant upon the first cause of action, and in favor of plaintiffs upon the second cause of action for $520, with interest thereon from September 15, 1920. A judgment was rendered which in terms awarded to defendant its costs incurred exclusively in defense of the first cause of action, and awarded to plaintiffs damages in the sum of $520 with interest, together with their costs incurred in prosecuting the second cause of action.

In due time defendant presented and filed its memorandum [1] of costs, and plaintiffs moved to strike the memorandum from the files and tax the costs. They also moved the court to amend the judgment by eliminating therefrom, the provision awarding defendant any costs. On June, 1922, the court entered an order denying to defendant any costs, but reciting that, since the amount of costs claimed had not been inserted in the judgment, a modification of the judgment was unnecessary.

In its notice of appeal defendant recites that it appeals from the judgment and from the order of June 10, 1922. Plaintiffs have moved to dismiss the appeals. The order of June 10 was, in effect, an order taxing costs within the meaning of section 9803, Revised Codes of 1921 (*State ex rel. Pierson* v. *Millis,* 19 Mont. 444, 48 Pac. 773), and is not appealable, but the ruling of the trial court is reviewable on appeal from the judgment (*Ferris* v. *McNally,* 45 Mont. 20, 121 Pac. 889).

The appeal from the judgment, then, presents two questions for determination: (1) The extent of defendant's liability for the loss of the two traveling-bags, and (2) the right of de-

fendant to recover costs incurred by it exclusively in defense of the first cause of action.

It is conceded, as it must be, that the transaction involving [2] the traveling-bags constituted a bailment for the benefit of both parties, or storage, within the meaning of sections 7660–7672, Revised Codes of 1921, and that in the transaction the defendant was not acting as a common carrier. (*Fraam v. Grand Rapids & I. Ry. Co.,* 161 Mich. 556, 21 Ann. Cas. 96, 29 [3–4] L. R. A. (n. s.) 834, 126 N. W. 851.) At the time the traveling-bags were deposited in defendant's parcel-room plaintiffs received a check for each bag. Aside from the serial number, each check had printed on it the following:

"Great Northern Railway Company

"Parcel Room Check.

"Devils Lake, N. Station.

"Conditions.

"1. Ten cents for each 24 hours or fraction thereof.

"2. Issues for one parcel only.

"3. Charges collected on delivery.

"4. This company is not responsible for damages to perishable goods or fragile articles.

"5. Liability in case of loss or damage not to exceed ten dollars.

"6. If a parcel is not claimed within 30 days, it will be sold for charges.

"7. A deposit of 50 cents will be required if this duplicate check is lost. If it is returned within 60 days refund will be made.

"8. One check will be issued for one parcel only. Parcels with articles attached will not be accepted."

Plaintiff Vernon R. Jones deposited the bags and received the checks, and in doing so acted for his wife as well as for himself. He testified, in effect, that at the time he received the checks he observed that each of them had a number and other printed matter on it extending from the top to the bottom of the check; that he had the opportunity to read the

printed matter, but did not read it, and if he had read the provisions for limited liability he would not have deposited the parcels with the defendant company; that he accepted the checks assuming that they were merely the means of identifying the property. Defendant requested the court to charge the jury that by accepting the checks plaintiffs agreed to the terms printed upon them, including the provision for limited liability, and could not recover more than $10 for the loss of each hand-bag with its contents. The request was denied, and error is predicated upon the ruling.

The relationship of bailor and bailee results from contract, express or implied. In the absence of some special agreement, the measure of the bailee's liability for the loss of the property through its negligence is the reasonable value of the property (*Cohen* v. *Henry Siegel Co.*, 220 Mass. 215, 107 N. E. 912), but it is permissible for the parties to agree specially for limited liability so long as the contract itself does not violate the law or contravene public policy (6 C. J. 1112). The correctness of these principles is not called in question, so that we are confronted primarily with the inquiry: Did these parties enter into a special contract which limited defendant's liability to $10 for the loss of each parcel?

It is elementary that in order to create a contract there must have been a meeting of minds, or, stated differently, there must have been an offer by one party and its unqualified acceptance by the other. Since it was competent for the defendant as warehouseman to prescribe the terms upon which it would render the services contemplated, it may be conceded that by tendering the checks it made an offer to receive and care for the parcels upon the terms expressed by the matter printed upon them, so that the real question, reduced to its simplest forms, resolves itself into this: Did plaintiffs accept the terms thus proposed? If they had received the checks and had read understandingly the matter printed upon them and then retained them without objection, they would be held to have consented to the terms imposed and bound by the pro-

visions for limited liability.   As to the correctness of this rule there cannot be any controversy.   If they had received the checks and retained them without knowing that they contained any terms or conditions and without notice from the bailee and upon the assumption that the checks were merely the means of identifying their property, they would not be held bound by the provision for limited liability, upon the theory that the minds of the parties never met; hence the special contract was never entered into.

Though authorities may be found which, in principle, question the correctness of this rule, we think it is sound and supported by the better reasoned cases.   The instant case, however, does not fall strictly within the group governed by either of the foregoing rules.   Counsel for defendant cite *Terry* v. *Southern Ry.*, 81 S. C. 279, 18 L. R. A. (n. s.) 295, 62 S. E. 249, and *Misssouri Pac. R. Co.* v. *Fuqua*, 150 Ark. 145, 233 S. W. 926, in support of their contention that plaintiffs are bound by the provisions for limited liability as a matter of law; but in each instance the court assumed that the special contract limiting liability had been actually entered into between the parties, and there is not any mention made of the facts which constituted an acceptance by the bailor, so that each of these cases properly falls within the rules first adverted to above.   The record before us discloses that plaintiffs received the parcel checks and examined them sufficiently to know that there was printed matter upon them.   They had the opportunity to examine them critically and the capacity to understand the meaning of the matter printed upon them. They did not read the printed matter and did not know that it contained a provision for limited liability, and if they had known of that provision they would not have stored the parcels with defendant.   Clearly, as a matter of fact, plaintiffs did not consent to the provision for limited liability, since they did not know of its existence, and they can be bound by it only upon the theory that it was their legal duty to know the contents of the printed matter; hence are chargeable with notice

thereof and bound to the same extent as if they had knowingly  ·
· expressed their assent to that particular provision.

A review of the British cases discloses a decided conflict of
opinion. In *Van Toll* v. *Southeastern Ry. Co.,* 12 Q. B.
(n. s.) 75, 142 Eng. Reprint, 1071, and *Lyons* v. *Caledonia R.
Co.,* 46 Scott. L. R. 848, it was held that if the provision for
limited liability is plain and obvious the ·bailor is held, as a
matter of law, impliedly to consent to it, whether he read it
·or did not. In *Parker* v. *Southeastern Ry. Co.,* 46 L. J. C. P.
(n. s.) 768, it was held to be a question of fact whether notice
of the limitation of liability had been brought home to the
·bailor, who knew that the ·check contained printed matter but
had not read it; and in *Harris* v. *Great Western R. Co.,* L. R.
1 Q. B. Div. 515, 45 L. J. Q. B. (n. s.) 729, the court declined
to say whether the question was one of law or fact, but the
judges, sitting as triers of fact as well as of law, held, as a
matter of fact, that the bailor in that instance was charged
with knowledge of the provision for limited liability and bound
thereby. There are very few American cases upon the subject.
As indicated above, in *Terry* v. *Southern Ry.* and *Missouri Pac.
Ry. Co.* v. *Fuqua,* the court assumed the existence of the con-
tract for limited liability, and the precise question before us
is not mentioned in the opinion in either case.

Counsel for defendant cite *Taussig* v. *Bode,* 134 Cal. 260,
86 Am. St. Rep. 250, 54 L. R. A. 774, 66 Pac. 259, which in-
volved an ordinary warehouse receipt given for liquors stored,
and which receipt had printed upon it a provision that loss by
leakage should be at the owner's risk. The court held the
bailor bound by the provision and said: "It was the duty of
respondents to take note of its contents, if they had the oppor-
tunity, and their opportunity was ample. The presumption,
therefore, is that they did read it. Against this presumption
there is no evidence, and none, we think, would have been
admissible to show that the respondents had failed to do what
their duty required them to do. Assuming, then, that they
read the receipt, and, whether they did or not, that they are

chargeable with knowledge of its contents, they had fair warning that any loss by leakage was at their risk, or, in other words, that the appellant declined all responsibility for loss by leakage. Their acceptance of the receipt and storage of the goods with knowledge of this condition made it binding upon them, as one of the terms of the contract.''

That case is not direct authority upon the question before us, for, though it may be said that defendant was acting in the capacity of warehouseman, the checks issued by it are not warehouse receipts as that term is understood generally. Whatever other function they may perform, they are primarily tokens or means of identification which are to be surrendered when the property is redelivered.

In *Healy* v. *New York Cent. & H. R. R. Co.*, 153 App. Div. 516, 138 N. Y. Supp. 287, affirmed 210 N. Y. 646, 105 N. E. 1086, it was held that where the bailor did not know of the stipulation for limited liability and his attention was not called to it by the bailee, he was not bound. In a concurring opinion Justice Houghton said: ''It seems to me that anyone in the ordinary course of business, checking his baggage at such a place, would regard the check received as a mere token to enable him to identify his baggage when called for, and that in no sense would he have any reason to believe that it embodied a contract exempting the bailee from liability or limiting the amount thereof. If the plaintiff knew that the defendant had limited its liability to $10, either by his attention being called to it or otherwise, then, of course, the law would deem him to have assented to it, so that a binding contract would be effected. If he did not know it, I think the law imposed no duty upon him to read his check to find whether or not there was a contract printed thereon, or that he was guilty of neglect in not so reading it, because he had no reason to apprehend that a contract was printed thereon.''

The facts in *Dodge* v. *Nashville, C. & St. L. Ry. Co.*, 142 Tenn. 20, 7 A. L. R. 1229, 215 S. W. 274, cannot be distinguished from the facts of the instant case. Dodge and his

wife deposited in the railway company's check-room in Chatta-nooga their hand-bag for safekeeping and received a numbered check which had printed upon it the following: ''Not re-sponsible for an amount to exceed ten dollars on any article covered by this check.'' The hand-bag and contents were lost, and plaintiff sued and recovered the value of the property, $224.50. In the supreme court the bailee insisted that the pro-vision for limited liability constituted a part of the contract and that the bailor was bound thereby. In disposing of the case the court said: ''The complainant testified that nothing was said to him by the young lady in charge of the defendant's check-room concerning the limited liability clause printed on the check given him, and that his attention was not called to said stipulation. While he does not expressly say so, we think it is inferable from the complainant's testimony that he did not read or know of the statement printed on the check until after the loss was discovered. * * * 'The parties to a bail-ment may diminish the liability of the bailee by special con-tract, the principle being that the bailee may impose whatever terms he chooses, if he gives the bailor notice that there are special terms, and the means of knowing what they are; and if the bailor chooses to make the bailment, he is bound by them, provided the contract is not in violation of law or of public policy, and that it stops short of protection in cases of fraud or negligence of the bailee; and provided further that the terms of the contract are clear, such stipulations being strictly construed,' '' citing 6 C. J. 1112. Reference is then made to the decision in *Healy* v. *Railroad Co.*, and the language of Justice Houghton above is quoted. The Tennessee court then continues: ''We think this statement of the law is sound and should control the case at bar. In the absence of notice to the complainant of the stipulation printed upon the check restrict-ing the liability of the defendant, we do not think that he should be bound thereby. * * * We do not think that the complainant, by receiving the numbered check, was chargeable with notice of the printed stipulation thereon. We do not

think that he was bound to regard it as a receipt containing a printed stipulation restricting the liability of the company, in the absence of his attention being called to such stipulation, but was warranted in regarding it as a mere check or token that would enable him and the agent of the defendant to identify his suitcase upon his return and making demand therefor. We do not think that an ordinarily prudent man would have regarded it as more, and the complainant was not guilty of a breach of duty in failing to apprise himself of such limitation. * * * It was simply a numbered check showing that the holder had deposited a parcel of some character with the defendant, which enabled the defendant to identify the parcel by comparing the number on the check with the number of the duplicate attached to the parcel. * * * It was for safekeeping that the complainant deposited his suitcase with the defendant, for which he was given the check of identification by the young lady in charge. He had no reason to suspect that said check contained any statement restricting the liability of the company, in the absence of his attention being called thereto."

Speaking in general terms, we agree with this conclusion. If the bailee does not call attention to the provision for limited liability and the bailor does not have actual knowledge of its existence, he is not bound by it, unless his course of conduct is such as to lead the bailee, as a reasonable person, to believe that he assents to the provision; and the mere fact that he retains the check without objection does not, as a matter of law, constitute such conduct, and in the absence of notice from the bailee that the check contains provisions which are intended to become a part of the contract, the bailor is not under legal duty to read whatever inscription may be upon it.

2. Costs *eo nomine* were not recoverable by either party at [5, 6] common law. They are the creatures of statutes, and in this state the defendant's right to recover costs must be made to depend upon our Code provisions. (*Spencer* v. *Mungus*, 28 Mont. 357, 72 Pac. 663.)

Section 9787, Revised Codes of 1921, provides that costs are allowed, of course, to plaintiff upon a judgment in his favor in any of the cases therein enumerated. Section 9788 provides: "Costs must be allowed, of course, to the defendant, upon a judgment in his favor in the actions mentioned in the preceding section." Section 9789 provides for the apportionment or division of costs in actions other than those mentioned in section 9787, and section 9790 likewise provides for the division of costs in an action wherein there are several defendants, defending separately, and plaintiff fails to recover against all of them. Aside from the provisions contained in these last two sections, there is not any statutory authority for dividing or apportioning costs incurred in the district court, and clearly neither of these sections has any application to the cause now before us, since it is one of the actions mentioned in section 9787, and there is but one party defendant.

By enumerating the particular instances in which costs may be apportioned, the statute impliedly excludes the right of apportioning them in any other instances, under the familiar maxim, *Expressio unius est exclusio alterius,* and since plaintiffs recovered a judgment exceeding $50, they were entitled to costs under section 9787, and the court properly struck defendant's memorandum from the files.

The hardship of this rule of which defendant complains is made manifest, and the argument in favor of a different rule might, with propriety, be addressed to the legislative assembly, but, in the absence of statutory authority, the courts have no discretion in adjudging costs. (*Montana Ore Pur. Co.* v. *Boston & Mont. etc. Co.,* 27 Mont. 288, 70 Pac. 1114.)

In several states statutes have been enacted to cover cases of this character; for instance, section 14402, Howell's Michigan Statutes, provides: "Where there are two or more distinct causes of action in separate counts, the plaintiff shall recover costs on those issues which are found for him, and the defendant on those which are found in his favor." The general rule, however, is stated as follows: "Unless there is statutory author-

ization therefor, costs cannot be apportioned, although both parties be successful in part. Hence, in the absence of such statute, if the plaintiff recovers judgment, although for only part of the relief demanded, he is entitled to costs, as in such cases he is regarded as the prevailing party." (15 C. J. 27.) And again: "In the absence of some special statutory provision for the apportionment of costs, where each party succeeds on one or more of the causes of action, claims, or issues, it would seem that the plaintiff, having obtained judgment for a part of the relief prayed, would, as the prevailing party, be entitled to such costs." (11 Cyc. 28.)

Section 8167, Revised Statutes of Nebraska of 1913, declares: "Where it is not otherwise provided by this and other statutes, costs shall be allowed of course to the plaintiff, upon a judgment in his favor, in actions for the recovery of money only, or for the recovery of specific real or personal property." Section 8168 provides that plaintiff shall not recover costs in certain enumerated cases. Section 8169 provides "Costs shall be allowed of course to any defendant upon a judgment in his favor in the actions mentioned in the last two preceding sections." Section 8170 declares that the costs may be apportioned in other cases. In *International Harvester Co.* v. *Schultz*, 102 Neb. 753, 169 N. W. 428, the construction of these statutes was before the court in an action in which plaintiff's complaint stated forty-four separate causes of action, but in which it recovered upon only sixteen. In disposing of the question presented the court said: "Each of the forty-four notes was separately stated as a cause of action. While the suit was pending twenty-eight of the notes were paid to plaintiff by the respective makers, and as to such notes the causes of action were dismissed and judgment was rendered for plaintiff on the remaining notes. Defendant argues that, because the suit was dismissed as to the notes paid, a part of the costs should therefore be taxed to plaintiff. His contention cannot prevail. The power of courts to award and tax costs in legal proceedings was unknown at the common law. (*Bran-*

*son* v. *Branson*, 84 Neb. 288 [121 N. W. 109].) We have no statute in this state authorizing the court to apportion any part of the costs against plaintiff in an action involving such facts as are presented by the record before us. It follows that, in the absence of such statute the prevailing party is entitled to recover costs. (15 C. J., p. 28, sec. 14.)

The several provisions of our statutes governing costs must be construed together and, thus construed, section 9788 must be held to apply only in an action wherein the defendant recovers a judgment and the plaintiff is altogether unsuccessful.

The authorities cited by defendant upon this branch of the case are not in point, as the most casual reading will demonstrate. In *Louisville & N. R. Co.* v. *Cofer*, 110 Ala. 491, 18 South. 110, there is not any statute cited, and the only authority for apportioning the costs in that case is 1 Chitty's Pleading, section 426, erroneously cited as 412. In *United States* v. *Minneapolis, St. P. & S. S. M. Ry. Co.* (D. C.), 235 Fed. 951, the court followed the Minnesota statute and awarded the costs to plaintiff as the prevailing party. In *St. Louis S. W. Ry. Co.* v. *Oliver* (Tex. Civ. App.), 37 S. W. 642, plaintiff's complaint stated two separate causes of action for damages. The trial court found for defendants as to the first cause of action, and in favor of plaintiff upon the second cause of action. The court of civil appeals of Texas disposed of the question of costs by saying: "We are clearly of the opinion that all costs that accrued by reason of plaintiff's claim for damages alleged to have been suffered in November, 1894 [first cause of action] should have been taxed against the plaintiff." No statute or other authority is cited in support of the conclusion. In *Allison* v. *Thompson*, 2 Swan (32 Tenn.), 202, reference is made to the statute, which provided: "In all actions  *  *  * the party in whose favor judgment shall be given, or in case of a nonsuit,  *  *  * the defendant shall be entitled to full costs." (Acts 1794, Chap. 1, sec. 74.) The court said: "The statute intends that if the plaintiff succeed in his demand, he shall have costs as an incident; but if he fail, he

shall pay costs to the defendant. The same principle will apply where a number of causes are joined in the same action, and the plaintiff succeeds as to some of them, and fails in the others. It is in effect a nonsuit, as to the alleged causes of action in which he does not succeed.'' In *Marianna Mfg. Co.* v. *Boone,* 55 Fla. 289, 45 South. 754, the action was for damages and the declaration contained two counts or causes of action. A general verdict was returned in favor of the plaintiff upon the first count only, and judgment was entered for the amount so found, together with plaintiff's costs. The supreme court held that the verdict was, in effect, a finding in favor of the defendant upon the second count. The court said: ''Where the verdict is in effect for the defendant on any one or more of the counts of a declaration the costs should be taxed as the statute and rules direct.'' There is not any reference made to a statute or rule of court, but the judgment awarding plaintiff his costs was affirmed.

Plaintiffs' motion to dismiss the appeal is overruled and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.