## AGRICULTURAL INSURANCE COMPANY, Plaintiff-Appellant v. CONSTANTINO, Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19353.

570

A. W. Brown, Cleveland, for plaintiff-appellant.
W. D. Hopkins, Cleveland, for defendant-appellee.

## OPINION

By SKEEL, J.

This action comes to this court on questions of law from a judgment of the Municipal Court of Cleveland. The plaintiff was the insurer under a contract of fire and theft insurance with respect to the automobile of one Joseph Bova, Jr. The automobile which was thus insured was parked in the defendant's parking lot located on High Street in Cleveland, Ohio. The car had been driven to the parking lot by the wife of Bova. She left the car with the ignition keys in the lock for the lot attendant to park and received a parking ticket or check. The parking ticket had the following statement printed therein:

"No attendant on duty after regular closing time. Cars left after closing hour at owner's risk. This station will endeavor to protect the property of its patrons but it. is agreed

that it will not be liable for loss or damage of cars, accessories or contents, from whatever cause arising."

When Mrs. Bova returned for the car, which was before the closing hour, the automobile had been taken by some one not known to her and without her knowledge or consent. The car was later recovered in a damaged condition. The insurance company settled the claim of Bova under the theft provisions of the insurance policy, for $154.69 and received a subrogation receipt whereby the plaintiff was vested with all of the rights of Bova arising out of the loss and damage by theft of the automobile.

The plaintiff filed its action in the instant case against the defendant, to recover the loss it had sustained. The petition alleges that the defendant became the bailee of the said automobile and that when the bailor called to take redelivery of the automobile the defendant failed and refused to return the same. That when said automobile was recovered it had been damaged to the extent of $154.69, which amount it was compelled to pay to the owner of said vehicle under its theft insurance contract it had with him, and upon the payment of said amount the owner subrogated this plaintiff to his rights against the defendant.

The defendant admits that the automobile was delivered into his possession; admits that it was not returned to Mrs. Bova upon her demand therefor, and alleges that prior to her demand for the return of the car it was taken away by persons unknown to him and without his knowledge or consent.

The defendant denies that the car was damaged before its recovery by Bova, or that the plaintiff was subrogated to the rights of Bova. The defendant then affirmatively alleges that the ticket or parking check issued by the defendant to Mrs. Bova, when he took possession of said automobile, by its terms relieved the defendant from liability for loss from all causes and that the person delivering said automobile was aware of the contents of said ticket and consented thereto.

The reply of the plaintiff denied that Mrs. Bova ever read or consented to any of the restrictions of liability contained on the parking ticket. The plaintiff introduced evidence in support of each of the controverted allegations of its petition. At the conclusion of the plaintiff's case the defendant's motion for judgment (the case being tried to the court without the intervention of a jury) was granted. It is the claim of the plaintiff that the court committed error in granting the defendant's motion for judgment.

The grounds upon which the court granted such motion were because of the claim that the ticket or parking check which Mrs. Bova admitted receiving when she parked her car contained a complete release of liability of the defendant from all causes. The state of the record on this question is as follows:

The defendant, by its answer, sets up the release as hereinbefore set forth and alleged "that the person delivering said automobile to defendant's parking lot was aware of the contents of said ticket and consented to the same."

The plaintiff's reply alleged:

"* * * that a ticket was given to the bailee (bailor) Mrs. Joe Bova, Jr., at the time the automobile was left at the parking lot, but that at no time did she ever read the contents of said ticket or agree to the printed terms thereon."

The only evidence in the record as to the identification check or ticket and the manner in which it was given, was as follows:

"Q. Were you given a ticket?
A. Yes.
Q. Did you read that ticket?
A. No, I never did read a ticket.
Q. And you don't know, of course, the contents of that ticket, then?
A. I never paid no attention to the ticket. I always figured you are parking your car and you have paid for it and they ought to take care of it."

It is to be noted that by the pleadings, the plaintiff's reply puts in issue the allegations of the defendant's answer, that the plaintiff assented to be bound by the restrictions printed on the claim check or ticket so that an issue of fact was clearly presented, unless it can be said, as a matter of law, that the mere taking of such a ticket, without more, would absolutely create such a contract. And there is no admission to be found in the evidence that the bailor agreed to such a limitation. In fact, just the reverse is true. The bailor when she received the ticket, considered it as an identification check and not an offer to contract, by which the defendant was attempting to relieve himself of his common law duty as a bailee.

There are circumstances in bailor-bailee relationships where the receipt which is given for the goods bailed is uni-

versally understood to contain the terms of the bailment contract. Bills of lading and warehouse receipts are the most notable examples. These are transactions of "considerable commercial importance, has some period of time to run and where it would be natural for the parties to stipulate as to the terms thereof and not rely upon the general principles of law in determining the bailee's liability. * * *" Brown on Personal Property, Par. 84 at page 300.

But such a rule would not fit into the general mould in which people generally enter into bailment relationships for the temporary convenience of the bailor, such as his use of the facilities of a checkroom or a parking lot. Directly following the quotation from Brown on Personal Property, supra, the author says:

"The English courts take a similar position in regard to goods deposited in the checkrooms in railroad stations, and like places where the check given the depositor contains limitations of the depository's liability and a few courts in the United States have reached a similar conclusion. The almost unanimous opinion of the United States is, however, contrary * * *. The simple difference between the English and American cases would seem to be that in the former it is believed that the customer of a check room should reasonably suspect that a check containing printed matter given for the deposited goods, contains the terms of a contract, while the American courts take the position that the customer may reasonably regard the same as a mere token for identification purposes, unless he is expressly informed otherwise."

Healy v New York Central R. R., 210 N. Y. 646, 105 N. E., 1086 (1912).

Denver Union Terminal R. R. Co. v Cullinan, 72 Colo., 248; 210 Pac., 602.

Jones v Great Northern R. R., 68 Mont., 231; 217 Pac., 673.

In American Jurisprudence, Vol. 6, page 273, par. 178, the rule is stated as follows:

"* * * There is authority for the view that a mere token or receipt given to the bailor by the bailee after a completed delivery of the subject matter, and which bears written conditions purportedly limiting the bailee's liability, becomes no part of the contract, but the parties remain subject to the usual obligations imposed by law at least in the absence of anything to indicate that the bailor assented to the conditions before delivering the property to the bailee." Fessler v De-

troit Taxicab & Transfer Co., 204 Mich.,694; Maynard v James, 109 Conn., 365; **Ohio Jurisprudence, Vol. 5, page 101, par. 12;** American Jurisprudence, Vol. 6, par. 179.

We conclude that there is presented by the record an issue of fact as to whether or not the bailor agreed to the conditions presented on the ticket as constituting the terms of the bailment contract, which plaintiff is entitled to have considered, and that the court committed prejudicial error in holding that the accepting of the ticket with such limitations printed thereon was conclusive of this issue.

The provisions printed on the ticket as set forth, supra, are not enforcible for another reason, and that is that they are against public policy. The restrictions begin with the statement that the bailee will "endeavor to protect the property * * * but it is agreed that it (he) will not be liable for loss or damage of cars, accessories or contents **from whatever cause arising.**" This is all inclusive. It would include the wilful misconduct of his employees; it would include his own negligence or wilful act in violation of the bailor's rights; it would include every conceivable ground or cause of loss.

It is a well recognized rule of law that in an ordinary mutual benefit bailment, the bailee may relieve himself from the liability imposed upon him by the common law so long as the provisions of such contract are not against public policy. By the great weight of authority it is against public policy to attempt by contract to relieve oneself from the consequences of his own negligence. This is certainly true if the attempted restriction involves his own wilful misconduct or wrong-doing. There are, of course, some exceptions to the rule as is exemplified by the case of **Insurance Co. v Railway Co., 74 Oh St 30.** In this case the railway company entered into a lease with the Shelby Stove Co. By the terms of the lease the railroad company provided that it should not be liable because of any loss sustained by the lessee because of fire, even though such fire was caused by the negligence of the lessor or its employees in the operation of its trains. The court said, in the first paragraph of the syllabus:

"A stipulation in a lease by a railroad company that the lessee is to exonerate it from all liability for damages by fire to any property or structure on the demised premises which in the operation of the railroad may be accidentally or negligently communicated to it, is not void as against public policy."

Here, there was one specific thing which was the subject of the release and the lessee knowing the limitation could

either protect himself from the excepted danger or refuse to enter into a contract at all. Examples, likewise, distinguishable from the general rule, may be found in Brown on Personal Property, pages 304-5. But Brown states the general rule on page 302 as follows:

"Although there are some contrary cases, the general rule in this country is that a bailee may not contract to exempt himself from liability arising out of his own negligence."

And in the case of **Hotels Statler Co. v Safier, 103 Oh St 638,** the Supreme Court of Ohio, without referring to the 74th O. S. says on page 646 of the opinion:

"* * * ordinarily in bailments the parties may diminish the liability of the bailee by special contract, provided the contract is not in violation of law or of public policy, and does not relieve the bailee of negligence." (6 C. J. 1112).

See **Ohio Jurisprudence, Vol. 5, par. 21, page 114.**

We therefore conclude that even if the bailor had consented to this limitation, it would not have been enforceable because within its terms it attempted to relief the bailee from liability resulting from the wilful wrong either of himself or his employees or his or their negligence and therefore was against public policy.

There is one other question presented by the record. Did the plaintiff make out a prima facie case by showing the de- livery of the automobile to the defendant, his acceptance there- of as bailee and upon the bailor's calling for its return, the showing of the inability and refusal of the defendant bailee to redeliver the automobile.

It is suggested that because by the pleadings, the fact that the automobile was stolen is admitted, the defendant having pleaded such fact in his answer and the plaintiff's reply fail- ing to specifically deny such allegation, that the plaintiff has the burden of showing, in the first instance, that the theft of the automobile was the proximate result of the defendant's negligence.

The plaintiff's petition is based upon contract and not in tort.

Therefore, while there is some conflict to be found in the cases, by the great weight of authority it is not a necessary part of the plaintiff's case to allege and prove negligence. The plaintiff has a right to stand on his contract and the failure to return the goods upon demand, when all the other

conditions of the contract have been met, constitutes a breach of the bailee's duty under the contract, for which an immediate action may be brought. It is sometimes said that the failure to return the goods upon demand creates a presumption of negligence which, even in those jurisdictions which require the element of negligence as a part of the bailor's case, is sufficient to make a prima facie case so that the burden of proceeding with the evidence is thus placed upon the defendant bailee to explain his failure to return the goods.

Brown on Personal Property, par. 87 at page 325.

**O. Jur., Vol. 5, par. 30, page 124.**

North River Ins. Co. v Ohmer, 63 A. Rep. 346.

American Juris., Vol. 6, par. 371, page 449.

8 C. J. S., par. 50 (b), page 341.

But it is claimed in the instant case as above indicated that because the defendant has alleged that the automobile was stolen, which fact is pleaded in the answer and not specifically denied in the reply, as required by the rules of practice of the Municipal Court of Cleveland, that the presumption of negligence on the part of defendant created by his failure to return the property, is counter-balanced as a matter of law and that the burden of proceeding as well as the burden of proof is upon the plaintiff to show that the defendant was negligent in protecting the property against theft which resulted proximately in plaintiff's damage.

In considering this question, we are not unmindful of a decision of this court, Case No. 13614, styled **Syndicate Parking Co. v General Exchange Ins. Co. et, 17 Abs 596**, decided June 11, 1934, on page 505 of Vol. 44 of our Unreported Opinions. After setting forth the rule that the failure to return the bailed goods upon demand rightfully made, created a presumption of negligence against the bailee, the following statement is found:

"In the instant case, the plaintiff alleged and proved the theft of the car and thus accounted for its loss. Therefore, there was no presumption of negligence from the failure of the defendant to explain the loss, because the plaintiff furnished the explanation. The effect of this was to place the burden of proof upon the bailor to show that defendant parking company did not exercise ordinary care."

The rule as thus stated is not in harmony with the great weight of authority.

In the case of North River Ins. Co. v Ohmer, supra, the Court of Appeals of the 2nd. Dist., had this question before

it and after referring to the Snydicate Parking Co. case and the case of **Blackburn v Norris, 46 Oh Ap 467,** stated the rule as follows: (page 351 of opinion)

"If we were required to formulate a rule controlling presumption and burden of proof, where the subject of bailment is an automobile, we would say that where the relationship of bailor and bailee appears, the property is shown to have been in the possession of the bailee under a contract and upon demand the bailee cannot produce the automobile, a presumption of negligence on the part of the bailee will properly arise and plaintiff would be entitled to recover for any damage shown, unless the bailee produces evidence of sufficient weight to counter-balance the presumption against him and the mere proof of theft of the automobile from the property of the bailee will not in and of itself meet the presumption of the plaintiff's case * * *."

8 C. J. S., page 348, par. 50 (c) (2):

"In loss by fire or theft: The weight of authority holds that the bailee may ordinarily rebut the presumption of negligence by proof of loss arising from the burglary or theft or fire. Where, however, the bailee proves loss or damage of the bailed article by theft or fire, but attempts no explanation of the circumstances and offers no proof of facts from which an inference of due care may be drawn, he does not rebut the presumption of his negligence arising from failure to return the bailed property * * *."

Wexler v National Ben Franklin Ins. Co., 281 N. Y. S. 949; American Juris. Vol. 6, page 447-8, par. 369:

"In actions based on breach of contract: Where the bailor relies upon the contract of bailment, and his right of recovery is not construed as predicated upon the bailee's failure to exercise due care, as to where he pleads simply the bailment, delivery thereunder and failure to redeliver on demand or as agreed upon, without tendering the issue of negligence, the burden of proof, to establish a breach of duty, which rests on the plaintiff throughout the trial, is merely the burden of showing the bailee's failure to perform his contract to return the property. Since the bailee is liable upon his contract in such a case, unless he offers a lawful excuse for his failure to perform, where he seeks to excuse his failure to redeliver on

the ground that the property was lost, destroyed, or taken out of his possession, without his fault or negligence, he offers an affirmative defense, and the burden rests upon him to establish, upon the whole case, by the required degree of proof, his exercise of due care and a loss of the property notwithstanding; the ultimate burden of proving negligence in such a case should not, propertly, be placed upon the bailor."

In Brown on Personal Property, par. 87, page 326, and seq., the rule and the reasons are stated as follows:

"* * *. The principal reason for relieving the bailor of the duty of showing in the first instance specific acts of negligence on the part of the bailee and of allowing the bailor to recover by proof merely of the delivery and the non-return of the goods or of damage to them while in the custody of the bailee, is that the latter has in his possession the means of ascertaining the exact cause either of the failure to return, or of the damage to the goods. To require the bailor at the start of the trial to present such evidence would bar him from recovery altogether."

And on page 330 of the same authority, in considering the question of the burden of proceeding after a showing that the property was lost by fire or theft, the rule is stated as follows:

"Many courts hold, where the bailee proves that the goods were lost by some specific casualty, such as fire or theft, that he has rebutted the bailor's prima facie case and the burden is shifted to the bailor of offering evidence to prove that the loss was due to the bailee's negligence. The weight of recent authority, however, would seem to be that the mere proof by the bailee that the loss was due to fire or theft, is insufficient to shift the burden of proceeding with the evidence, but that the bailee must also show that such loss was not due to his negligence. The evidence offered by the bailee that the failure to return was due to fire or theft, may indeed raise a presumption that such loss by fire or theft was due to the negligence of the bailee. If such loss would not ordinarily occur unless the bailee had been negligent, we have a case of a presumption based on a logical inference. * * *"

The fact, therefore, that the pleadings do not put in issue the defendant's claim that the automobile which had been bailed with the defendant had been stolen, does not, without

further explanation on the part of the defendant, tending to show that he was without negligence, counter-balance the presumption of negligence on his part created by his failure and inability to return the automobile to the bailor upon demand. The court should have put the defendant on his proof and to render judgment for the defendant at this stage of the proceeding was reversible error.

It will be noted up to this point we have been concerned with the question as to the duty of the respective parties of proceeding with the evidence at particular stages of the proceeding. There remains the question of whether or not, under the facts as presented in the instant case, the burden of persuading the jury or court is ultimately upon the plaintiff to show that the defendant was not in the exercise of the degree of care required of a bailee and as a result of such breach of duty he permitted the property to be stolen, or whether the burden is upon the defendant to show that the loss of the property was not due to any failure of duty on his part.

At the outset it must seem quite foreign to our law to place upon one in the position of the defendant the burden of proving that he was not negligent or that he had not failed in his legal duty to avoid a judgment being rendered against him. But, if there be legal justification for such a rule, certainly the facts involved in a bailment creates one of the legal situations wherein it should have application. The bailment relationship can only result where the bailee is given the exclusive possession of the bailor's goods. He is the only one who has the means of knowing the facts concerning the loss or destruction of the property, and the means which he employed to protect them. As between the bailor and the bailee, the bailor is at a distinct disadvantage upon the issue of the loss of the goods and the care exercised for its protection by the bailee. And based upon this reasoning there is respectable authority for the view not only that the burden of proceeding shifts to the bailee after the bailor has presented a prima facie case by showing the failure of the defendant bailee to return the goods upon demand being made therefor, but also, where the failure of the bailee to return the goods is because their loss or destruction was occasioned by fire or theft, or for any other cause affirmatively asserted by the defendant, but also the burden of proof that is of persuading the jury that he was without negligence in the premises, is likewise upon the bailee.

Such a theory is recognized in our statutes. Section 8464 of the Chapter on Warehouse receipts, after setting forth the circumstances under which the warehouseman is obliged to redeliver the goods, the following paragraph is found:

"* * * In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the **burden** shall be upon the warehouseman to establish the existence of a lawful excuse for such failure."

In the case of **Graham v Davis, 4 Oh St 362,** paragraph 3 of the syllabus, the court held:

"In an action against a carrier upon a bill of lading containing an exception of the dangers of the river navigation and inevitable accidents, after the non-delivery of the goods is shown, the burden of proof is upon the carrier to show, not only a loss within the terms of exception, but also that proper care and skill were exercised to prevent it."

Again referring to Brown on Personal Property, the author on pages 333 and 334, after saying that the weight of authority is that the plaintiff bailor in an action for the loss of the goods or their damage while in the possession of the bailee, has the burden of persuading the jury as to the negligence of the bailee, said:

"A determined and persuasive minority * * * take the position that the bailee has the burden of persuading the jury that the loss or damage to the goods in his custody was not occasioned by his failure to use the degree of care required of him by the substantive law * * *."

We conclude that the modern trend of the law of bailments is toward placing the burden upon the bailee not only of proceeding with the evidence, but also of persuading the jury that he was in the exercise of due care under the circumstances where the goods have been lost or destroyed while in his possession, by fire or theft, or other causes, where, by the ordinary experience of man, if reasonable care was exercised or used, such loss or destruction ordinarily would not have occurred, and that such rule should be applied to the trial of this cause.

For the reasons thus stated, the cause is reversed and remanded for further proceedings according to law.

MORGAN, P. J., concurs in judgment.
LIEGHLEY, J., dissents.