# ALLEN v. SOUTHERN PAC. CO.

No. 7367.    Decided January 19, 1950.    (213 P. 2d 667.)

See 13 C. J. S., Carriers, sec. 878. Bailments, bailee's limitation for negligence, see note, 175 A. L. R. 8. See, also, 6 Am. Jur. 293.

*Howell, Stine & Olmstead,* Ogden, *Clyde C. Patterson,* Ogden, for appellant.

*Ray, Quinney & Nebeker,* Salt Lake City, for respondent.

WADE, Justice.

Frank J. Allen, appellant herein, commenced an action to recover the value of a traveling bag and contents which he

had checked with respondent herein at its parcel room in the Union Station at Portland, Oregon, and which it failed to return to him. From a judgment awarding him $25 and costs he appeals. The appeal is here on the judgment roll.

The court found that appellant while in Portland, Oregon, and enroute from that city to Pocatello, Idaho, checked a traveling bag and contents which were worth $2190 and which for a consideration was to be kept by respondent safely and securely until returned to appellant. That at the time this bag and contents were deposited with respondent it issued a parcel check or receipt which had printed upon it on one side the following:

"Notice—Liability for loss of, damage or delay to, any parcel limited to not exceed $25.00 unless at time of deposit a greater sum is declared and paid for at rate of 10 cents for each $25.00 or fraction thereof for 30 days or less. No parcel valued in excess of $250.00 will be accepted. Parcels remaining on hand 30 days may be sold for charges;" and on the reverse side:

"Date and time delivered

"For Excess Liability See Notice on Opposite Side

"Parcel storage rate, 10 cents for each 24 hours or fraction thereof. Maximum charge for 30 days, $1.00."

There was also posted a sign at this parcel room to the same effect as the printing on the check, which sign was visible to appellant when he checked his bag but which, the court found, he did not see or read nor did he read the printing on the check and respondent's agents failed to call his attention to the information contained in either the sign or the check, and appellant had no knowledge of the limitations contained therein.

The court also found that respondent failed to take due care of or safely keep appellant's bag and contents but instead delivered them to some person not known to appellant and failed to deliver them to appellant upon his demand a few hours after he had checked them.

From such findings of fact that court concluded as a matter of law that respondent's liability was limited for appellant's loss by contract to the sum of $25.

The sole question before this court is: Was the court correct in holding that respondent's liability was limited by contract?

Ordinarily, a bailee for hire is responsible for the value of the goods entrusted to him if it is lost or destroyed. However, the parties may enter into a valid agreement to modify the obligations which would otherwise arise from the relationship of bailor and bailee if it

"* * * does not violate the law or contravene public policy, and so long as it is actually a part of the contract of bailment and is expressed in clear and unmistakable language * * *" 6 Am. Jur. Bailments, Sec. 174, page 268.

The great weight of authority is that a bailee cannot entirely exempt himself by contract from liability due to his negligence and contracts limiting his liability for negligence during the course of a general business with the public are usually regarded as being against public policy. See 6 Am. Jur. Bailments, Sec. 176. But even where such contracts are not against public policy there must be actual assent to the conditions modifying the bailee's liability growing out of the contract of bailment.

In the instant case the court, as the trier of the facts, found that appellant did not see or read the notice posted at the parcel room, nor did he read the check, that he had no actual knowledge of the limitations contained therein, nor were such limitations or conditions called to his attention. Under such a state of facts, it cannot be said that appellant actually assented to the limitations contained in the notice and check. The rule is aptly stated in 6 Am. Jur. Sec. 179, wherein it is said:

"————Effect of Provisions Posted, or Printed on Identification Token————

"The rules stated in the preceding section are supported by the authorities which hold that merely posting a notice on the bailee's premises, limiting liability for loss of personal property bailed for hire, as, for example, in a check room where property is left for safekeeing, or in a warehouse, or garage where the bailed property is left for storage, is not sufficient to constitute a contract for such limitation, *for assent thereto will not be presumed.* Of course, if the bailor's attention is called to the sign and to the fact that it states a condition of the contract, and he delivers the property notwithstanding, he is ordinarily bound by the provision so far as it legally extends."

"Although there is authority apparently to the contrary, the trend of the more recent authorities is to view the receipt from the bailee at the time of the bailment of what is ostensibly a token for later identification of the bailed property, such as a check for a parcel left at a parcel stand or a numbered identification slip for an automobile left at a garage or parking station, does not bind the bailor as to the provisions, purportedly limiting the bailee's liability, which are printed thereon, where *his attention is not called to them and he has no actual knowledge at the time of the bailment that they are supposed to become part of the contract.* The mere retention of such a check without such knowledge does not bind him to the limitation. The mere fact that the bailor knows that there is writing on the token is immaterial as he is not bound to read it unless he has reason to believe it contains terms, and the same is true even *though in previous bailments between the same parties he has received similar tokens but has not read them or known that they contained terms."* (Italics added.)

Respondent contends that the rules that a bailee may not exempt himself from liability for loss due to his negligence because such a contract is against public policy nor that he may not limit his liability unless the contract is fairly and freely made and the bailee has actual knowledge of such limitation do not apply to the type of contract made herein where the limitation of liability varies in amount in direct proportion to the value declared and the charge paid by the bailor. In support of this argument it cites a number of United States Supreme Court cases. We have carefully read each of these cases and find that they deal with baggage or other personal property involved in a contract of carriage in interstate commerce and which are subject to the rules

and regulations of the Interstate Commerce Commission and applicable laws of congress. Under these rules the railroads have to file schedules giving the rates, charges and fares for transportation between different points and these cannot be changed by contract. These cases and the reasoning therein are distinguishable from the cases where the railroad company acts as a warehouseman, where the baggage is left for care and not for transportation. As stated by the court in *Boston & M. R. R.* v. *Hooker,* 233 U. S. 97, 34 S. Ct. 526, 527, 58 L. Ed. 868, at page 874, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593, in holding that where baggage is in interstate commerce it is subject to published rates and even though the shipper was not aware of the fact that there were different rates for different valuations of the property, the common carrier's liability was limited to the amount actually provided by the different scheduled rates:

"It is to be borne in mind that the action as tried and decided in the state court was not for negligence of the railroad company as a warehouseman for the loss of the baggage after its delivery at Sunapee Lake station, but was solely upon the contract of carriage in interstate commerce."

A checkroom business is no part of the business of a common carrier and when it acts in that capacity it is acting as a warehouseman. Although the court found that appellant was in Portland, Oregon and enroute to Pocatello, Idaho at the time he checked the bag and contents at respondent's parcel room, the bag was not in interstate commerce. He paid for checking it there just as he would have done were he not traveling and merely intended to store it for a period of time. The transaction was not connected, as far as the bailee was concerned, with the fact that he intended to travel from Portland to Pocatello. The cases respondent has cited therefore, do not help it. The fact that appellant was apparently given a choice of rates, not called to his attention, depending upon valuation goes only to the question of whether such a con-

tract if bona fide entered into knowingly by both parties is against public policy. It cannot affect the question of whether a contract limiting liability was actually entered into. This must depend upon whether the bailor actually assented to such a contract.

Respondent further argues that since the bailment occurred at Portland, Oregon, the interpretation of the effect of the contract must be governed by the law of that state. Even if we concede this to be true we do not see how it helps respondent. In *Voyt* v. *Bekins Moving & Storage Co.*, 169 Or. 30, 119 P. 2d 586, 127 P. 2d 360, on page 362 of the P. report, the prevailing opinion cites with approval the following:

"In *Jones* v. *Great Northern Ry. Co.*, 68 Mont. 231, 217 P. 673, 37 A. L. R. 754, it appears that plaintiff deposited traveling bags in a parcel room, and they were negligently lost. He paid ten cents per parcel. The check provided that liability in case of loss is not to exceed $10. Plaintiff testified that he had seen the printed matter on the checks but did not read it. It was held that he could recover the full value of the bag. Concerning this case, a note in 22 Mich. Law Rep. p. 155, states: 'The decision in the instant case is squarely on the principle that *without actual knowledge and assent by the bailor to the conditions on the parcel check there is no creation of a contract limiting the bailee's liability.* In every American case, but one, in which the question of actual notice to the bailor of the conditions on a parcel check limiting the bailee's liability was considered, the decision is in accord with the principal case.'" (Emphasis ours.)

Respondent further argues that since this case is here on the judgment roll the lower court's findings of fact are conclusive and this court is precluded from going into the question of whether a contract was actually entered into in this case since the lower court found there was such a contract and such a finding necessarily included a finding that there was a meeting of minds and assent to the conditions by the bailor. It argues that even though the lower court found as a conclusion of law that respondent's liability was limited by contract, that in reality such a finding is a finding of an ultimate fact. In support

of this theory it cites *Sandall* v. *Hoskins,* 104 Utah 50, 137 P. 2d 819. In that case we held that under the facts presented therein a finding of the court which involved a legal concept to determine was actually a finding of an ultimate fact rather than a conclusion of law. However, we did review the legal concepts involved in the conclusion and determined they were correct. Regardless of whether a finding is called a finding of fact or a conclusion of law, this court is never precluded from determining whether an error in construing the law has been made. In the instant case the court found as facts that appellant did not actually know of the printed conditions and that such conditions were not called to his attention by respondent's agent. Under such a state of the facts the court erred in concluding that as a matter of law a contract was entered into limiting liability to $25.

Reversed and remanded with instructions to enter judgment for appellant for full value of bag and contents. Costs to appellant.

WOLFE, LATIMER and McDONOUGH, JJ., concur.

PRATT, Chief Justice (concurring).

An examination of the authorities convinces me that the opinion of Mr. Justice Wade is in line with the weight of authority. I believe, however, we should recognize some limitation to the principles covered. I note the following expression in the case of *Healy* v. *New York Central and H. R. R. Co.,* 153 App. Div. 516, 138 N. Y. S. 287, at page 289, par. (2):

"* * * neither was there anything connected with the transaction, * * * which would tend in any way to suggest to a reasonably prudent man, or lead him to suspect, the existence of such a special contract, or tend to put him on guard or on inquiry relative thereto * * *."

This quotation refers to the bailor's lack of knowledge of any special limitation as to liability.

We say that even though a notice of limitation is posted where the bailor can easily see it—he may even have pushed it aside to put his suitcase down—unless his attention is called to the notice or sign, he is not bound by it. The effect of this is to say that the best evidence—the posted written notice is insufficient, but the poor memory of some clerk, who may have waited upon the bailor in a crowd, and has a great deal of trouble identifying him, is the real link in the chain of events that creates the special contract. The posting and existence of the sign can be proven by any number of people; but the calling specific attention to the sign is provable by only the one party, the clerk—if he remembers. Let us, however, accept that as the law. Should it be applied without limitation?

If a bailor seeks to claim unusual value to the suitcase deposited, should he not be classed as an individual of sufficient familiarity with our present economic ways of thinking, to realize that the ordinary human being is not desirous of assuming custody of a million dollars worth of jewels for the magnificent sum of ten cents? Our very materialistic ways of thinking, which are generally known to the public, would raise in the mind of the average individual, the question of whether or not the bailee would care to assume that much responsibility. Should he not be put upon inquiry, when he seeks to deposit the out-of-the-ordinary piece of baggage? I do not say the present case illustrates the out-of-the-ordinary deposit of baggage; but I do believe that the bailor should be held to some semblance of reasonableness in his actions.