WYATT v. BAUGHMAN et al.
HALE v. BAUGHMAN et al.
RENSHAW v. BAUGHMAN et al.

No. 7635.   Decided December 27, 1951.   (139 P. 2d 193.)

See 8 C. J. S., Bailments, sec. 50. Bailee, duty of care owed by. 6 Am. Jur., Bailments, secs. 240 et seq.; 96 A. L. R. 912.

*F. Henri Henroid, Fred L. Finlinson,* all of Salt Lake City, for appellant.

*Ray R. Christensen* and *Moreton, Christensen & Christensen,* all of Salt Lake City, for respondent.

DUNFORD, District Judge.

These cases were consolidated for trial before the District Court and for the purposes of this appeal. For convenience, we will refer to the parties as they appeared in the trial court.

Each of the plaintiffs was the owner of an airplane which was stored in a hangar belonging to the defendant, when the hangar, with its contents, was destroyed by fire. The parties stipulated that there was no express contract establishing the rights and obligations of the parties, beyond the agreement that defendant, for a consideration, would store the planes. Thus there was a simple contract of bailment for hire and the rights and duties of the parties are to be determined by implication from their conduct and the law governing simple bailment contracts generally. *Sumsion* v. *Streator-Smith, Inc.,* 103 Utah 44, 132 P. 2d 680.

The cases were twice tried to juries, and at the conclusion of each trial, the juries returned separate verdicts in favor of the defendant and against each plaintiff.

At the conclusion of the evidence at each trial, the plaintiffs moved for directed verdicts in their favor, and upon denial of such motions, and upon return of the verdicts against them, they moved for judgment notwithstanding the verdicts, and at the same time, they moved for new trials.

The trial court granted the motions for new trials upon the first hearing, but denied the motions for judgments notwithstanding the verdicts and for new trials upon the second hearing.

Plaintiffs claim error in the court's denial of the motions at the conclusion of the second trial, and defendant claims that either the present judgment should be sustained, or that this court should reinstate the judgments in his favor upon the first trial. The latter contention is made for the

reason that the new trial was obtained by the plaintiffs upon the ground of newly discovered evidence, which evidence, defendant asserts, was never produced at the re-trial.

Because we dispose of this cause upon plaintiffs' contentions, it will be unnecessary for us to determine the question of reinstatement of the judgment upon the verdict entered upon the first trial.

Plaintiffs rely upon *Romney* v. *Covey Garage,* 100 Utah 167, 111 P. 2d 545, and *Sumsion* v. *Streator-Smith, Inc.,* supra, as their sole authority, and contend that the effect of the holdings in those cases is to make the defendant bailee liable as a matter of law, because the defendant failed to conclusively prove due care upon his part, or, as they state it in their brief, he failed to present evidence

"conclusively negativing any negligence upon his part and affirmatively explaining the causa causans of the damage."

Sufficient stress is placed by plaintiffs in their brief upon the latter portion of the above quoted statement to require a specific holding of this court upon the question of whether the bailee must affirmatively show the specific cause of the loss of, or damage to, the bailed property, and his freedom from negligence, in order to avoid liability therefor, or whether he can be protected from liability where the specific cause of the loss or damage is unknown and undiscoverable but he negatives every possible inference of its being due to negligence upon his part.

Plaintiffs contend that this court has held in the *Romney* case [100 Utah 167, 111 P. 2d 546], that the affirmative of the first part of this question states the law, and they quote:

"[T]he policy of the law demands that he who had the goods under his care explain satisfactorily *why* they were stolen or damaged just as the doctrine of res ipsa loquitur demands that he who had control satisfactorily *explain the reason* for the accident."

At first glance, and taking the foregoing quotation out of the context of the case, a reasonable impression may be had that we set up a standard in the *Romney* case requiring the bailee to prove precisely how the res came to be damaged, lost or destroyed. But such a conclusion, from closer study, is not warranted even from the quotation itself, because it excludes as such a *reason,* an ultimate fact positively established, that they were damaged, lost or destroyed by some *unkown* reason, but without fault of the bailee, even though we specifically held that the basis of recovery by the bailor is negligence on the part of the bailee.

Be that as it may, however, it cannot escape notice that in the *Romney* case we were conscious of the difficulties facing a bailor in attempting to arrive at the cause of the loss or damage, and particularly to find facts from which the negligence of the bailee could be established, and we specifically adopted the rule which places

"the burden [upon the] bailee to show that the damage or loss *was not due to his negligence* and he stands the risk of non-persuasion on this point." (Emphasis added.)

The excerpt which plaintiffs quote, (second above) is contained within a discussion in whch we compared and differentiated the principles of res ipsa loquitur, with and from the principle quoted next above. We then stated:

"This holding puts negligence in ex delicto bailment cases and negligence in other tort cases *on a parity. Moreover, it brings the ex-contractu action for breach of the contract of bailment because of loss or damage in line with the action for negligence for such loss or damage. There is no real reason why the form of action should materially change the remedy or fasten on the plaintiff a greater burden in one case than in the other.* If the law is otherwise, holdings which will bring it in accord with this policy are overdue." (Emphasis added.)

Certainly no one would contend that a defendant in "other tort cases," is required in his defense to do more than convince the trier of the facts, that the preponderance

of the evidence fails to show that the loss or damage was *due to his* negligence. When in bailment cases for loss or destruction of, or damage to, the res, the law gives the bailor the "presumption" of negligence upon the part of the bailee which is sufficient to require a judgment in his favor as a matter of law unless the bailee presents *some* evidence to show his freedom from negligence, and when in the face of such evidence by the bailee, the law continues an "inference" of negligence to be weighed by the trier of the fact against bailee's evidence of non-negligence, as we hereafter more fully explan, it has given to the bailor all of the advantage which is required to place him *on a parity* with plaintiffs in other tort cases, without requiring the bailee at his absolute peril to affirmatively and specifically explain the cause of the loss or damage.

If the rule were otherwise, it would be difficult to conceive of a case where damages are sought for loss, damage or destruction of bailed property where the failment and loss, damage or destruction being stipulated or conclusively proved, a jury would have any function whatsoever. Without defendants' proof of non-negligence, the court would direct a verdict upon the showing of bailment and failure to return in good condition, and if the defendant produced evidence of non-negligence sufficient to satisfy the standard which plaintiffs contend for, the court would direct a verdict for the defendant. Yet, if anything is clearer than anything else in the *Homney* and *Sumsion* cases, it is that unless the case made by the defendant is so clear that it would warrant a direction of verdict, it must be submitted to the jury to weigh the inference of negligence against defendant's evidence of non-negligence.

Thus we hold that it is sufficient in actions for loss of or damage to bailed property for the defendant bailee, in order to escape liability, to show to the satisfaction of the trier of the fact that he was not negligent, or, if he was negligent in any respect, that his negligence was not the proximate cause of the loss or damage, and that

he need not specifically establish the exact cause of the loss, destruction or damage.

Is it then required that the bailee "conclusively negative" negligence upon his part? We presume that the plaintiffs use the word "conclusive" in its common, legal sense. Vol. 8, Words and Phrases, page 365 says conclusve means decisive; irrefutable, citing *State* v. *Bradenberger,* 151 Iowa 197, 130 N. W. 1065. It is that which from its nature the law allows no contradiction, citing *Joslyn* v. *Rockwell,* 59 Hun. 129, 13 N. Y. S. 311. In its primary legal meaning, it means beyond question or beyond dispute.

Plantiffs contend that the holdings in the *Romney* and the *Sumsion* cases require that the bailee defendant so "conclusively" establish his freedom from negligence.

In the *Romney* case, supra, this court held that a bailee for hire is bound to exercise the same degree of care to protect the bailed property from loss, destruction or damage as an ordinarily prudent person would exercise in caring for his own property, and that in an action by the bailor for the loss or destruction of, or damage to, the bailed property, the burden of proof, or, in other words, the risk of non-persuasion, *rests at all times with the plaintiff bailor.* And we further held that the bailor could make a prima facie case to meet the burden by showing the bailment and the loss or destruction of, or damage to, the bailed property. We here reaffirm these principles. We then pointed out two primary schools of thought, both supported by extensive and respected authority, as to the proof required by the bailee to overcome plaintiff's prima facie case, made by his showing (a) the bailment, and (b) the failure to return, or damage to the bailed property. One of those schools of thought, which we acknowledged, represented the majority view, is to the effect that to meet the prima facie case of the plaintiff, made by showing (a) and (b), the bailee needs only to prove that the loss,

damage or destruction resulted from fire, theft, or other cause

"which on its face does not disclose negligence by bailee and is not inconsistent with due care on his part".

We there termed the assumption of bailee's negligence upon the prima facie showing, a "presumption," but pointed out that the presumption disappears from the cause upon proof by the bailee that the cause of the loss, or destruction of, or damage to the res, was fire or some other cause which does not disclose negligence upon its face. With such disappearance of the presumption, under this doctrine, the burden shifts back to the plaintiff bailor to prove specific acts of negligence on the part of the bailee. We rejected that principle.

But we did accept ,in face of the admission that it represented a minority rule, the principle that when (a) and (b) are shown by plaintiff, the burden then rests upon the

"bailee to show that the damage or loss *was not due to his negligence* and he stands the risk of non-persuasion on this point", (Italics added in the quotation.)

even though the loss is shown to have resulted from fire or theft, etc. We accepted the latter standard because we conceived that fire or theft do not ordinarily occur where the owner or holder of property exercises reasonable care and diligence to protect it against those contingencies.

In our statement accepting that standard, we neither called the assumption of negligence from proof of (a) and (b) a "presumption" or an "inference," but we did state on page 172 of 100 Utah, on page 547 of 111 P. 2d:

"That the question *was for the jury where it could not be said as a matter of law that the explanation for the mishap was so satisfactory or complete as to overcome the INFERENCE of negligence which the event bespeaks* was recently held by this court in *White* v. *Pinney*, [99 Utah 484] 108 P. 2d 249.

\* \* \* \* \*

"Thus in determining the fact of negligence *the jury may consider the INFERENCE raised by the fact that the car* was stolen while under the bailee's care; that it occurred by reason of negligence; just as it may also consider evidence showing freedom from negligence. If in considering the evidence [including the *inference*] on both sides the jury is *not* persuaded that negligence by bailee either did or did not exist, then it must find for *bailee [defendant], because on bailor [plaintiff]* rests the burden of proving negligence. *But the question is a factual one for the jury UNLESS THERE IS UNCONTRA-DICTED, POSITIVE AND COMPETENT EVIDENCE ONE WAY OR THE OTHER THAT NEGLIGENCE DID OR DID NOT EXIST WHICH WOULD ENABLE THE COURT TO DIRECT A VER-DICT."* (Emphasis added.)

We did not intend to modify these rules in the *Sumsion* case, supra. In the latter case we stated our holding in the *Romney* case in these words, 103 Utah 58, 132 P. 2d 686:

"In *Romney* v. *Covey Garage,* supra, we held that in actions ex delictor by the bailor against the bailee the ultimate burden of proof at all times remained on the bailor, *but we further held that he could meet this burden in the ordinary bailment case by showing the bail-ment and the failure to return or the return in a damaged condition. This showing gave rise to an INFERENCE of negligence which re-quired the bailee to come forward with an explanation to show that the injury or loss was not due to his negligence. UNLESS BAILEE [Defendant] CONCLUSIVELY PROVED DUE CARE SO THAT A DIRECTED VERDICT WAS REQUIRED the jury would be al-lowed to consider BOTH THE INFERENCE [for the plaintiff] AND THE EVIDENCE SO PRODUCED BY THE BAILEE [De-fendant]."* (Emphasis added.)

Plaintiffs' confusion in the application of the cited cases, quite excusably, comes from the use of the word "infer-ence" in the *Romney* case and the word "presumption" employed in the *Sumsion* case, in defining the rule by which, in bailment cases, negligence is assumed from the proof of bailment and the loss or destruction of, or damage to, the bailed property.

Because there is much misunderstanding in the use of the terms, see instruction to note 95 A. L. R. 162, *Stumph* v. *Montgomery,* 101 Okl. 257, 226 P. 65, 32 A. L. R. 1490,

quoting Wigmore on Evidence, Section 2491, American Law Institute, Model Code of Evidence, Ch. 8, page 306, Shain: Res Ipso Loquitur, Presumptions and Burden of Proof, page 22, et seq., *Buhler* v. *Maddison*, 109 Utah 245, 166 P. 2d 205, it would serve little purpose to launch into a general and exhaustive analysis and definition of them here with the refinements that such a discusson would entail. Courts and text writers have long confused them, and have struggled to develope comprehensive definitions and distinctions which, to a large extent, have rather added to than relieved the confusion. In the effect, distinctions have been sought and commonly adopted upon the basis of "presumptions of law," and "presumptions of fact." The authorities cited supra, are the authorities supporting the following analysis:

"Presumptions of law," which are the only true presumptions, either bar evidence to the contrary or disappear from a case when evidence to contradict them, sufficient to amount to *some* evidence, is adduced in the case. "Presumptions of fact," which are in truth "inferences," do not disappear from the case at all, but must go to the fact trier to be weighed along with the evidence presented in contravention of them. Thus in common legal parlance the same assumed fact may in one case be designated as an "inference" as in the *Romney* case, or as a "presumption" as in the *Sumsion* case, but in each case the designation given by the court is in the legal effect the same, and may be comprehensively termed as "inference" or "presumption of fact," or as merely a "presumption" as it was called in the *Sumsion* case.

"Presumptions of law" are assumptions made by the law itself, compelling the court to a resulting conclusion. They may or may not have a logical or reasonable foundation in basic fact. They are of two kinds, "irrebuttable" or "conclusive" presumptions, and "rebuttal" or "disprovable" presumptions.

"Irrebuttable presumptions," as e. g., that the Constitution was duly and regularly adopted, have become of such wide acceptance that they admit of no evidence whatsoever to the contrary, and therefore bind the Court, the parties and the cause to the fact presumed, or have been so fixed by mandate of the legslative body as to admit of no proof to the contrary. There is no ingredient of inference contained therein, and, because they admit of no controversy, there need not be.

"Rebuttable presumptions" are facts assumed because common experience has established that they ordinarily exist where the basic facts from which the assumption arises have been established, but which may, in truth and in fact, not exist at all, as e. g., that a child born in coverture ■ is the natural offspring of the husband. Such presumptions have the effect of controlling the court, the parties and the cause only so long as they stand without refutation. But they disappear completely from the case upon presentation of contravening evidence sufficient to amount to the degree of evidence required by the law to meet such presumption. When that is done the existence or nonexistence of the assumed fact must be determined upon the evidence for and against its existence, with no assistance whatsoever from the presumpton, because that element of the assumed fact has dropped from the case.

Commonly, the latter type of presumption, "rebuttable presumptions," inherently contain within them a logical or a reasonably ingredient related to the basic facts upon which they rely. If they had no such relationship they would not be rebuttable. Thus where such quality exists, they carry a continuing influence into the case which has capacity to persuade the trier of the facts of the conclusion that the assumed facts does exist. This continuing logical or reasonable effect upon the existence or nonexistence of the fact assumed by the presumption is an "inference" and not a "presumption" at all, (despite the frequent misnomer applied to it as a "presumption of fact" by the text writers

and courts) and is only a part or an ingredient of the presumption which existed until contrary evidence appeared.

Thus an assumed fact, whether it is conclusively assumed by the law and thus admitting of no contravention, or assumed by the law until the required degree of evidence to the contrary is adduced, (both of which assumptions are "presumptions of law") either stands in absolute bar against further inquiry (conclusive presumptions) or disappears completely from the case upon presentation of the required degree of evidence in contravention, (rebuttable presumptions) and the latter classification of presumptions of law does disappear, even though the inherent capacity of the basic facts to raise the "inference" does, in the latter classification of presumptions, continue on in the case to be weighed with the contravening evidence by the trier of the fact.

An "inference" or what is, as we have seen, frequently called a "presumption of fact," is a logical and reasonable conclusion of the existence of a fact in the case, not presented by direct evidence as to the existence of the fact itself, but inferred from the establishment of other facts from which, by the process of logic and reason, based upon common experience, the existence of the assumed fact may be concluded by the trier of the fact.

It seems to be plaintiffs' contention in the instant cases that this court in the *Sumsion* case modified the rule announced in the *Romney* case particularly because at page 59 of 103 Utah, at page 686 of 132 P. 2d we stated:

"Ordinarily, under the rule of the *Romney* case, supra, the plaintiff can meet this burden [prima facie case] by showing as the plaintiff did here, the bailment and the return in a damaged condition. Upon this showing the law arbitrarily raises a *presumption* of negligence which makes a prima facie case for the plaintiff sufficient, unless bailee conclusively proves due care, to carry the case to the jury." (Emphasis added.)

From the foregoing analysis of the terms "presumption" and "inference," it must be apparent that what we referred to in the above quotation from the *Sumsion* case as a "presumption," prior to introduction of evidence to contradict it, is truly a rebuttable "presumption of law." It is sufficient in the absence of evidence negativing negligence to warrant a directed verdict for the plaintiff, when the bailment and loss, damage or destruction of the bailed property is established. But the presumptive element of the assumption disappears from the case upon presentation of some contravening evidence. The "inference," however, which was inherently part and parcel of the "presumption of law," continues in the case after the presumption of law itself has disappeared, and goes to the trier of the facts to be weighed along with the contravening evidence because such inference, like all inferences capable of being drawn from evidence intrinsically containing the seeds from which logical deductions may be made rests on basic facts which remain in the case.

This "inference" in the instant case logically and reasonably arose from the fact of bailment of the planes to the defendant, the fact of destruction of them by fire, and the fact, based upon reason and common sense and thus noticed as a matter of common knowledge, that fires in airplane hangars do not ordinarily occur except for negligence of some person, most likely the bailee who not only had the bailed property but had in his possession the means of their care.

In both of the cited cases we held, and we hold here, that even though the rebuttable presumption of law (of negligence) arose upon plaintiffs' proof of bailment and destruction, upon presentation by the defendant of evidence to prove due care, the "presumption of law" disappeared, but there remained an "inference of fact (of negligence) which the law required the court to submit to the jury for weighing along with the evidence

presented in the case to contravene the "inference" of negligence.

The "inference" being only "evidence of negligence" and not, at the time of submission of the cause to the jury, a "presumption" of negligence, the "inference" was for the exclusive consideration of, and weighing by the jury, to be submitted under proper instructions by the court.

In Instruction #4 in the second trial of these causes, while the trial court submitted to the jury more than was needed in face of the stipulation of the parties, in fairly and comprehensively informed the jury that from the facts of bailment and destruction, the law raised ▪ the inference that the damage would not have occurred except that the defendant was negligent. He told them that that inference was part of the evidence in the case to be weighed by them, and that if the defendant had not overcome the inference by his own evidence, it was their duty to award plaintiffs the value of their planes. This was, to say the least, all the plaintiffs were entitled to. The jury found the issues in favor of the defendant. This is a law case, and this court is bound by the judgment if there is competent evidence to support the verdict of the jury.

As heretofore indicated, the plaintiffs made no specific claims of negligence by their evidence. Upon their "rest," the defendant thus undertook to consider from what sources negligence upon his part might arise and to present evidence to prove due care within those conceivable sources of negligence. He presented competent evidence respecting the nature and manner of physical construction of his hangar tending to prove due care. He presented competent evidence of the wiring and electrical system, tending to prove due care. He showed the condition of the weather, and what he did to overcome it, to relieve himself from implications of negligence for having a fireless furnace and frozen water pump in the hangar. He produced considerable evidence concerning storage of inflammable materials

in the attic and shop, tending to prove due care. He answered the questions of maintenance of fire extinguishers in the hangar, tending to establish due care. He explained the parking of a plane outside the hangar and near its doors in a manner tending to remove an implication of negligence upon his part. There was no suggestion made by plaintiffs, either by way of evidence or argument, of a source from which negligence might arise, upon which the defendant did not present some competent evidence tending to negative his negligence.

Thus, the inference and the contradictory facts were duly and properly submitted to the jury, and their conclusion of non-negligence of the defendant, or of no proximate cause if they found negligence, as the case may be, cannot be disturbed.

The judgment is therefore affirmed with costs to the respondent.

WOLFE, C. J., and McDONOUGH, J., concur.

WADE, J., concurs in the result.

CROCKETT and HENRIOD, JJ., being disqualified, did not participate herein.