641 P.2d 508

**OMNI AVIATION MANAGERS, INC.,
Plaintiff-Appellee,**

v.

**William P. BUCKLEY and Doris C.
Buckley, Defendants and Third
Party Plaintiffs-Appellants.**

**No. 13528.**

Supreme Court of New Mexico.

March 2, 1982.

Wycliffe V. Butler, Albuquerque, for appellants.

Sheehan & Sheehan, Mary Vermillion, Albuquerque, for appellee.

## OPINION

PAYNE, Justice.

Plaintiff-appellee Omni Aviation Managers, Inc. (Omni), as subrogee of the claim of the insured, Avcor Enterprises, Inc. (Avcor), sued defendants-appellants Mr. and Mrs. Buckley for damages to Avcor's airplane due to the defendants' alleged negligence. The district court found that the defendants were negligent and that their rental contract with Avcor did not limit their liability for damage to the airplane. The defendants appeal, claiming three errors: 1) that the rental contract limited the lessee's liability for damage to the airplane; 2) that the plaintiff failed to join all indispensable parties, so that the trial court lacked jurisdiction to hear the case; and 3) that the trial court improperly applied the negligence law of New Mexico in deciding the case. We reverse on the first issue.

On September 2, 1976, defendant William Buckley signed a standard form rental

agreement provided by Avcor which authorized him to rent airplanes from Avcor on a continuing basis. The contract contained the following provisions:

17. I agree to pay for any loss or damage to the aircraft or to other persons or property caused in whole or in part by my failure to comply with the above, or by my negligence or pilot error, *not covered by insurance.* [Emphasis added.]

18. I expressly agree to and hereby indemnify and hold lessor harmless of, from and against any and all loss, costs, damages, attorney's fees and/or liability in connection with the foregoing contract.

The contract also provided two statements: "I agree to pay $1.00 per flight hour in lieu of the deductible physical damage liability [,] _____ Date _____[;] I do not wish to pay the $1.00 per flight hour and agree to remain liable for the specified physical damage deductible liability [,] _____ Date _____." [1] Neither of the statements was completed. Buckley rented an airplane from Avcor and piloted it from Albuquerque to Puerto Vallarta, Mexico. While attempting to land in Puerto Vallarta, the Buckleys negligently caused $10,371 in damage to the plane.

The Buckleys paid Avcor $2,913.72, which represented in part the costs of returning the damaged plane to Albuquerque and the deductible amount of $500 specified in Avcor's insurance contract with Omni. Subsequently Omni paid Avcor $9,871.75 in damages pursuant to the insurance contract and brought suit against the Buckleys as subrogee of Avcor's claim.

The trial court found that "the terms of the rental agreement . . . did not limit the defendants' liability for damage to the aircraft" and that the payment the Buckleys made to Avcor did not constitute a complete settlement and release relieving them from further liability. Therefore, the court concluded, Omni was entitled to judgment against the Buckleys.

■ The lease of personalty, such as an automobile or an airplane, is a bailment, and the lease agreement is governed by the law of contracts as well as the law of bailments. 8 Am.Jur.2d *Bailments* § 4 (1980); Annot., 43 A.L.R.3d 1283 (1972); Annot., 44 A.L.R.3d 862 (1972).

■ Although an ordinary bailee [2] is normally held liable for his negligence toward a bailed item, he may limit or disclaim his liability for his own negligence by so providing in the contract of bailment. *Langford v. Nevin*, 117 Tex. 130, 298 S.W. 536 (1927); 8 Am.Jur.2d *Bailments* §§ 154–55 (1980). We have examined exculpatory clauses in contracts in the context of leases of real property, *see Acquisto v. Joe R. Hahn Enterprises, Inc.*, 95 N.M. 193, 619 P.2d 1237 (1980), but not in the context of bailment contracts. In *Acquisto*, we held that the parties to a lease of real property may vary the rule that each bears the risk of loss caused by his own negligence, but to do so they must either agree to a specific allocation of the risk or must expressly provide in the lease that one party is relieved

---

1. Whether the first option was still available at the time Buckley signed the contract was disputed at trial. Buckley testified that it was not pencilled out at the time he signed the agreement. Gelder, the president of Avcor, testified that, although he was not present when Buckley signed the contract, it was Avcor's policy for their representative to cross out the first option at the time of signing. However, at oral argument, Omni's counsel conceded that both options must be considered as part of the whole contract in order to determine the parties' intent.

2. We use the term "ordinary bailee" here to refer to a bailee in an arrangement that is "essentially private in nature, so that no other than the bailor and bailee are directly and materially affected" by the limitation of liability. Brodkey, *Contractual Limitation of Bailee's Liability in Illinois*, 8 DePaul L.Rev. 25, 33 (1958). We do so because those bailees involved in arrangements which directly affect third parties, such as common carriers, are not permitted, absent special legislation, to limit their liability for their own negligence as a matter of public policy. *Id.*

from liability for his negligence. We noted that one method by which the parties to the lease may agree to allocate the risk is by specifying which of them will carry fire insurance for the benefit of both. We also held that in determining whether the parties intended to vary the ordinary rules of liability, a court must construe the lease as a whole.

Those courts of other jurisdictions which have dealt with contract clauses disclaiming or limiting a bailee's liability for his negligence have generally held that the exculpatory clause must be expressed in clear and unambiguous language. *See, e.g., Hill v. Carolina Freight Carriers Corp.*, 235 N.C. 705, 71 S.E.2d 133 (1952). Most of them have also held that the clause will be strictly construed and "will not be interpreted as effecting the exemption if any other meaning may reasonably be ascribed to the language employed." *Langford v. Nevin, supra*, 298 S.W. at 537. The result of the application of this strict construction rule has often been that a contract provision that would seem to relieve the bailee of liability for his negligence is ruled not to do so because the parties failed to use the word negligence in the provision. *See, e.g., Hill v. Carolina Freight Carriers Corp., supra* (provision that plaintiff "will bear . . . all losses thru [sic] . . . collision to said motor vehicle" held not to relieve defendant of liability for employee's negligence). Thus, the parties' ostensible freedom of contract has been circumvented through strict construction by the courts. Annot., 175 A.L.R. 8, 19 (1948). However, examination of those cases employing the strict construction rule reveals that in most of them the bailee either prepared the bailment contract, *see, e.g., Minnesota Butter & Cheese Co. v. St. Paul Cold-Storage Warehouse Co.*, 75 Minn. 445, 77 N.W. 977 (1899); *Hill v. Carolina Freight Carriers Corp., supra; McAshan v. Cavitt*, 149 Tex. 147, 229 S.W.2d 1016 (1950); *Langford v. Nevin, supra*, or entered into a series of negotiations over the contract with the bailor, *see, e.g., Anchor Casualty Co. v. Robertson Trans-* *port Co.*, 389 S.W.2d 135 (Tex.Civ.App. 1965). Other courts have relaxed the strict construction rule, even when the bailee prepared the contract. *See, e.g., Blinder v. United States Fire Ins. Co. of New York*, 103 F.Supp. 902 (N.D.Ill.1952) (phrase "any loss of or damage to said article" held to refer to losses due to bailee's own negligence); *Klann v. Hess Cartage Company*, 50 Mich.App. 703, 214 N.W.2d 63 (1973) (provision that bailee "shall not be liable for the loss of, or damage to, the aforesaid equipment, however caused" held to unequivocally absolve bailee of liability for own negligence). *See also Buckey v. Indianhead Truck Line*, 234 Minn. 379, 48 N.W.2d 534 (1951).

The application of the strict construction rule has tended to weaken contract provisions that disclaim or limit the bailee's liability for his own negligence, and thus perpetuate the former rule that the bailee cannot exculpate himself from such liability. The two major purposes behind that rule have been "(1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have the power to drive hard bargains." *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 91, 75 S.Ct. 629, 632, 99 L.Ed. 911 (1955) (footnote omitted).

The application of the rule of strict construction in the case at bar would do little to achieve those purposes. Avcor, the bailor, provided the contract without any participation from Buckley, the bailee, who obviously did not have the power to drive a hard bargain. If anything, it was Buckley and not Avcor who needed protection here. Also, to suggest that failure to apply the strict construction rule here "would, without more, tend to encourage bailees to be careless is unrealistic and . . . highly conjectural and remote." Brodkey, *Contractual Limitation of Bailee's Liability in Illinois*, 8 DePaul L.Rev. 25, 27 (1958). Instead, a relaxation of the strict construction rule here would advance the goals of

freedom of contract and security of transactions. We therefore hold that when the bailor prepares the contract of bailment without the participation of the bailee the rule that exculpatory clauses are to be strictly construed against exonerating the bailee from liability for his own negligence will not be rigorously applied. The parties to a bailment contract need not use any particular magic words to disclaim or limit the bailee's liability; their intent, clearly expressed or necessarily implied from the contract as a whole, will determine whether the bailee is liable. Thus, we adopt the rule of *Acquisto v. Joe R. Hahn Enterprises, Inc., supra,* as applicable to the case at bar.[3]

In determining the intent of Avcor and Buckley regarding the limits of Buckley's liability, we must examine paragraphs 17 and 18 and the insurance options quoted above. Meaning and significance must be given to each provision in its proper context with all other parts of the agreement. *Schultz & Lindsay Construction Co. v. State,* 83 N.M. 534, 494 P.2d 612 (1972). Paragraphs 1 through 16 establish the standard of care Buckley had to exercise toward the airplane. Omni argues that paragraph 18 is an unlimited assumption of all liability by Buckley, and that paragraph 17 merely sets out his liability for damages not covered by insurance. Such a reading of the two paragraphs, however, makes paragraph 17 superfluous since it would merely be restating a part of what Buckley agreed to assume under paragraph 18. We reject this interpretation, since "[t]he court will if possible give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable." 4 Williston on Contracts § 619, at 731 (3d ed. 1961) (footnote omitted). Instead, we read

paragraph 17 as allocating the risk of personal injury or property damage caused by Buckley's departure from the standard of care established by paragraphs 1 through 16, or his negligence or pilot error. Paragraph 18 allocates all other risk under the contract.

The rental contract, however, is ambiguous. Paragraph 17 implies that the pilot's negligence is covered by insurance. The insurance options refer to "deductible physical damage liability" and "specified physical damage deductible liability." A pilot could read the options as providing insurance to cover the deductible amount of the insurance already compensating for the damages dealt with by paragraph 17. From this he could reasonably conclude that he is liable under paragraph 17 for only the amount Avcor would itself be liable for under its insurance policy. This interpretation differs from Omni's interpretation, that paragraph 17 merely implicitly reserves a claim against the pilot for the specified damages, whether or not they are covered by insurance.

Because the contract is reasonably and fairly susceptible of different constructions, it is ambiguous. *Vickers v. North Am. Land Developments,* 94 N.M. 65, 607 P.2d 603 (1980). Although "[t]he mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity," *id.* at 68, 607 P.2d at 606 (citation omitted), we are unable to determine the parties' intent from the contract as a whole. "The mere fact that we have to speculate demonstrates the ambiguity of the agreement." *Young v. Thomas,* 93 N.M. 677, 679, 604 P.2d 370, 372 (1979).

There is no substantial extrinsic evidence in the record to support Omni's interpretation. Instead, there is evidence to support Buckley's interpretation. The construction

---

**3.** The application of the rules governing leases of realty to cases involving bailment contracts, and vice versa, is not unheard of. See, for example, *Bleakley v. Fixture Exchange Corporation,* 470 S.W.2d 296 (Tex.Civ.App.1971), and *Wichita City Lines v. Puckett,* 156 Tex. 456,

295 S.W.2d 894 (1956), applying *Langford v. Nevin, supra,* to leases of realty, and *Anchor Casualty Co. v. Robertson Transport Co., supra,* applying *Puckett* to bailment contracts. *See also Gulf Compress Co. v. Harrington,* 90 Ark. 256, 119 S.W. 249 (1909).

of a contract adopted by the parties, as evidenced by their conduct, is entitled to some weight in ascertaining their intention and understanding of the contract. "This is particularly true as to the resolution of ambiguities and uncertainties of meaning in the contract [citations omitted], and especially so if the conduct of the parties manifesting their construction of the contract occurred prior to the development of a controversy between them." *Schultz & Lindsay Construction Co. v. State, supra,* 83 N.M. at 536, 494 P.2d at 614. After the accident but almost a year before this suit was filed, Avcor, at Omni's instruction, deleted paragraph 17 from all its contracts so that they would not contradict Avcor's insurance policy with Omni. This constitutes some evidence that Avcor and Omni realized that paragraph 17 was at least ambiguous.

■ We must construe the ambiguities in the contract most strongly against the party who drafted it. *Id.* Although Avcor did not draft the contract, it adopted it, so the contract will be construed against Omni, Avcor's subrogee. Since there is no substantial extrinsic evidence to support Omni's interpretation, we hold that the terms of the contract limit Buckley's liability to the amount of damages not covered by Avcor's insurance. Under these circumstances, this reasonable interpretation of the contract satisfies the rule of *Acquisto v. Joe R. Hahn Enterprises, Inc., supra.*

Omni is also bound by the limitation of liability and cannot sue Buckley for reimbursement of its payments to Avcor under the insurance contract. *See* 16 Couch on Insurance 2d §§ 61:111, :113 (1966). We

therefore reverse the judgment of the trial court and remand the case with directions to dismiss Omni's claim against the Buckleys.

IT IS SO ORDERED.

EASLEY, C. J., and FEDERICI and RIORDAN, JJ., concur.

SOSA, Senior Justice, respectfully dissenting.

SOSA, Senior Justice, dissenting.

I respectfully dissent. The majority opinion incorrectly expands the holding of *Acquisto v. Joe R. Hahn Enterprises, Inc.,* 95 N.M. 193, 619 P.2d 1237 (1980), to allow courts to construe lease agreements to find an *implied* agreement as to which party will bear the risk of loss due to negligence. This is clearly contrary to the ruling in *Acquisto* which requires an *express* exculpatory provision before a negligent party will be allowed to escape liability.

As in *Acquisto,* the parties in the case at bar failed to expressly agree that the pilot would purchase flight insurance; therefore, the pilot must bear the loss for his own negligent conduct. This result falls squarely within paragraph 17 of the lease agreement which states that the pilot agrees to pay for any damage "not covered by insurance," and with paragraph 18 in which the pilot agrees to indemnify the lessor against "any and all loss . . . and/or liability." Under the majority's ruling, the negligent lessee is allowed to escape liability for his negligence.

For the foregoing reason, I respectfully dissent.