Douglas J. ALLRED and George
S. Diumenti, Plaintiffs and
Appellees,

v.

Larry H. BROWN and Arthur J. Ritter,
Defendants and Appellants.

No. 930815–CA.

Court of Appeals of Utah.

April 4, 1995.

Brian M. Barnard (argued), John Pace and Joro Walker, Salt Lake City, for appellants.

James C. Lewis (argued) and William H. Lindsley, Bountiful, for appellees.

Before DAVIS, Associate P.J., and JACKSON and WILKINS, JJ.

## OPINION

DAVIS, Associate Presiding Judge:

Defendant Larry H. Brown appeals the judgment in favor of plaintiffs Douglas J. Allred and George S. Diumenti, claiming, inter alia, that the trial court erred when it determined there was a bailment between Brown and plaintiffs which included an express agreement that Brown would secure the necessary insurance before piloting plaintiffs' airplane. We affirm.

## FACTS

Arthur J. Ritter and Brown are co-owners of several businesses which provide passenger air services and cargo transporting services. Ritter is the business manager of these ventures, while Brown acts as the operational manager and chief pilot. On or about April 28, 1984, Diumenti, Ritter, and Brown met to discuss leasing plaintiffs' twin engine Cessna 414 for defendants' business purposes. Ritter and Diumenti purportedly entered into a lease to which Brown was not a party. With respect to insuring Brown as a pilot on plaintiffs' airplane, Brown, Ritter, and Ritter's wife claim that Diumenti was adamant about covering Brown under Dium-

enti's insurance policy, and that Diumenti would take the necessary steps to obtain coverage for Brown. Although Diumenti agrees that Brown was to be covered under Diumenti's insurance policy, he claims that at the April 28 meeting both Ritter and Brown agreed to contact Diumenti's insurance agent and secure the waivers needed to have Brown added to the policy. Diumenti further testified that when he delivered the keys to the airplane to Brown on April 30, 1984, he specifically told Brown that he "didn't expect that airplane to go anywhere until there was insurance." It is undisputed, however, that Brown was never added to Diumenti's policy nor was he insured under his own policy and, therefore, he was not insured to pilot the airplane.

On May 9, 1984, while Brown was piloting the airplane and Ritter was the sole passenger, a substantial amount of damage to the airplane was sustained in an accident. As a result, plaintiffs sued both Brown and Ritter for damages, asserting three causes of action: (1) breach of contract; (2) negligence; and (3) bailment. Plaintiffs' contract claim against Brown was dismissed after the trial court found that Diumenti had "unequivocally" testified that the contract to lease the airplane was between Ritter and Diumenti, and Brown was not a party. Nevertheless, at the end of the trial, judgment was entered against both defendants and in favor of plaintiffs. The trial court concluded that by failing to insure Brown on plaintiffs' airplane, both Ritter and Brown had breached their contract with plaintiffs.

Brown appealed the conflicting rulings of the trial court. This court held in an unpublished decision that the trial court erred "when, after dismissing the first cause of action for breach of contract, it concluded that Brown was liable to plaintiffs for breach of contract." *Allred v. Brown*, No. 910040, slip op. at 3 (Utah App. May 12, 1992). The matter was reversed and remanded for a determination of the remaining two causes of action of negligence and bailment.

After a hearing on the negligence and bailment claims, the trial court concluded that "possession and control of the airplane was delivered to defendants under a bailment

arrangement." The trial court further concluded that the parties had an express agreement under the bailment contract that Ritter and Brown were to procure insurance to cover Brown as a pilot of plaintiffs' airplane. Because Ritter and Brown failed to fulfill this agreement and plaintiffs were damaged by this failure, Brown was held liable to plaintiffs. Brown appeals.

## ISSUES

Brown raises several issues on appeal: (1) whether the trial court erred in finding a bailment between Brown and Diumenti when it had earlier found that no contract existed between the two parties; (2) whether the trial court erred in finding liability under the bailment when there was no finding of negligence; and (3) whether the trial court erred in finding an express provision to the bailment agreement.

## STANDARD OF REVIEW

■ A bailment is defined as "the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it."

*M. Bruenger & Co. v. Dodge City Truck Stop,* 234 Kan. 682, 675 P.2d 864, 868 (1984) (quoting 8 Am.Jur.2d *Bailments* § 2)); *accord Nava v. Truly Nolen Exterminating of Houston, Inc.,* 140 Ariz. 497, 683 P.2d 296, 299 (Ct.App.1984); *Christensen v. Hoover,* 643 P.2d 525, 528–29 (Colo.1982) (en banc); *see also McPherson v. Belnap,* 830 P.2d 302, 304 (Utah App.1992) (bailment created when possession and control over personal property passes from bailor to bailee). "The existence of possession and control and the intentions of the parties with respect to the property involved in a bailment are factual questions." *McPherson,* 830 P.2d at 304. Accordingly, this court " 'will not set aside a trial court's factual findings unless they are against the clear weight of the evidence or we otherwise reach a definite and firm conviction that a mistake has been made.' " *Id.* (quoting *Hoth v. White,* 799 P.2d 213, 216 (Utah App.1990)). Further, when disputing findings of fact, the challenging party "must marshal all the evidence supporting the trial court's findings and demonstrate that despite such evidence the factual findings are clearly erroneous." *Id.*

## ANALYSIS

Brown first challenges the trial court's finding of bailment. Brown asserts that because the trial court found no existing contract between Brown and Diumenti, there can be no finding of a bailment because a bailment is a form of a contract. *See Sumison v. Streator–Smith, Inc.,* 103 Utah 44, 132 P.2d 680, 685 (1943).

■ Plaintiffs' first cause of action was a contract claim which encompassed the lease allegedly entered into between Ritter and Diumenti and it was this claim only that Brown moved to dismiss at the close of plaintiffs' case. When Brown's counsel asked the trial court to dismiss the contract claim, he stated, "We would move to dismiss various portions of the claim of [plaintiffs'] cause of action. First, to the contractual cause of action ... *We would move to dismiss that first cause of action* [.]" (Emphasis added.) The third cause of action, however, was a bailment claim, which the trial court recognized as a separate cause of action and with respect to Brown's motion to dismiss, stated, "We are not addressing that yet[.]" Further, when the court did address the bailment claim, Brown's counsel stated, "We would not make any motion at this time [regarding the bailment cause of action]." Thus, Brown understood that the contract claim was the only cause of action dismissed by the trial court and that the bailment claim was preserved for a later ruling.

Furthermore, when bringing suit for damages, a plaintiff is entitled to assert many theories of recovery. Additionally, a contract claim is exclusive of a bailment claim, even though a bailment claim sounds in contract, because a bailment claim and a contract

claim require different elements of proof.[1] Thus, because the bailment claim was preserved by the parties and the trial court for later disposition, and because the two claims are separate and distinct, dismissal of the contract claim did not result in dismissal of a similar claim in the context of bailment.

Brown next argues that the evidence was insufficient to support a bailment finding. In order to establish a bailment, "[t]he bailor must actually or constructively deliver the property to the bailee in such a way as to entitle the bailee to exclude others from possession during the bailment period, including the owner/bailor." *McPherson*, 830 P.2d at 304. The relationship between bailor and bailee focuses upon the bailor surrendering possession and control over his or her property to the bailee. *Id.* The trial court found that Brown had "sole possession and control of the airplane" and that he "made use of the airplane." Although in the appendix to his appellate brief Brown purports to marshal all the evidence in support of the trial court's bailment finding,[2] Brown does not address the supporting evidence and merely renews his argument that the evidence weighs more in his favor. *See id.* (party challenging trial court's findings of fact must marshal evidence in support of the findings *and* demonstrate that "despite such evidence, the factual findings are clearly erroneous"). Therefore, because Brown does not properly challenge the finding of a bailment and, specifically,

does not challenge the finding that he had possession and control over plaintiff's airplane, we uphold the trial court's finding.[3]

Brown also argues that even if there was a bailment between himself and Diumenti, plaintiffs have not shown that Brown was negligent in his operation of plaintiffs' airplane and, therefore, he cannot be held liable. Brown's argument, however, is an incorrect statement of the law of bailment; liability is not necessarily predicated upon negligence.

■■■■ Generally, a bailment is a contract implied in law. *Sumison*, 132 P.2d at 685; *cf. Wyatt v. Baughman*, 121 Utah 98, 239 P.2d 193, 194 (1951). "[T]he rights and duties of the parties are to be determined by implication from their conduct and the law governing simple bailment contracts generally." *Wyatt*, 239 P.2d at 194; *accord Sumison*, 132 P.2d at 685. Because of the implied nature of a bailment, a court will not impress upon the bailment parties express terms to which they did not agree. *Sumison*, 132 P.2d at 685. The law imposes a duty upon the bailor only to " 'exercise due care in the protection of the goods committed to his [or her] care.' " *Id.* at 686 (citations omitted); *accord Romney v. Covey Garage*, 100 Utah 167, 111 P.2d 545, 546 (1941). It follows, therefore, that when a bailor brings suit based on a bailment implied in law, the liability of the bailee is founded upon negligence, and it is negligence that the bailor must prove.[4]

---

1. A lease of personal property is considered a bailment and thus a lease agreement is covered by both bailment law and contract law. *Omni Aviation Managers, Inc. v. Buckley*, 97 N.M. 477, 641 P.2d 508, 510 (1982).

2. Brown also includes a great deal of evidence supporting his argument that there was no bailment, an unnecessary exercise when challenging a trial court's finding of fact. *See McPherson v. Belnap*, 830 P.2d 302, 304 (Utah App.1992) (stating that when challenging a trial court's finding of bailment, a party "must marshal all the evidence *supporting* the trial court's findings") (emphasis added).

3. Brown claims that because the lease was between only Ritter and Diumenti and Brown was introduced to Diumenti as Ritter's agent, there can be no finding of bailment. Even if the evidence before the trial court had not cut against, but in favor of, a finding of an agency relation-

ship, that issue was not before the trial court. We therefore refuse to address it on appeal. *John Deere Co. v. A & H. Equip., Inc.*, 876 P.2d 880, 888 (Utah App.), *cert. denied*, 890 P.2d 1034 (Utah 1994).

4. In a bailment cause of action, the law typically presumes negligence on behalf of the bailee if the personal property is not returned to the bailor in the agreed upon condition. *Staheli v. Farmers' Co–op of S. Utah*, 655 P.2d 680, 682 (Utah 1982); *Sumison v. Streator–Smith, Inc.*, 103 Utah 44, 132 P.2d 680, 686–87 (1943); *Romney v. Covey Garage*, 100 Utah 167, 111 P.2d 545, 546 (1941). After the bailor has proven bailment and damage to the bailed goods, the burden of proof then shifts to the bailee to show that he or she exercised due care in handling the bailed item. *Staheli*, 655 P.2d at 682; *Sumison*, 132 P.2d at 686–87; *Romney*, 111 P.2d at 546.

This presumption is one of necessity which arises only because of the peculiar facts ordi-

 ·Notwithstanding this implied nature of bailment contracts, a bailor and bailee may enter into a valid agreement to modify the obligations which would otherwise arise from the relationship of bailor and bailee if it "does not violate the law or contravene public policy, and so long as it is actually a part of the contract of bailment and is expressed in clean and unmistakable language ... [.]" [Additionally,] there must be actual assent to the conditions modifying the bailee's liability growing out of the contract of bailment.

*Allen v. Southern Pac. Co.,* 117 Utah 171, 213 P.2d 667, 668 (1950) (quoting 6 Am.Jur. *Bailments* § 174); *cf. Wyatt,* 239 P.2d at 194. Accordingly, when the bailee has assumed additional liability beyond that normally imposed by law, and it is upon this liability that the bailor brings his or her suit, the action is a contract action for breach of the bailment contract, and not, as Brown suggests, a tort bailment claim. Although the bailor in a contract bailment action must still prove an agreement and breach of that agreement, the bailor need not prove negligence on the part of the bailee. "[I]f parties arrange rights, duties, and obligations under a [bailment] contract, any cause of action for breach of those contractually defined obligations, rights, or duties lies in contract, not in tort." *Interwest Constr. v. Palmer,* 886 P.2d 92, 101 (Utah App.1994). Thus, parties to a bailment contract are entitled to modify their liability and responsibilities in any way they see fit, as long as they stay within the boundaries of the law and do not violate public policy. If the bailment contract does not expressly encompass the breach sued upon, then the bailor must resort to the negligence cause of action, and meet his or her burden of proof accordingly. *See id.* ("[A] breach of contract may also constitute a breach of duty that is not subsumed by the contract and may thereby give rise to a cause of action sounding in tort.") Therefore, plaintiffs are not required to prove that Brown was negligent in causing the damage to plaintiff's airplane, but need only prove the breach of a bailment term expressly agreed upon by the parties.

 Thus, the crux of Brown's appeal becomes his challenge to the trial court's finding that the terms of the bailment between Brown and Diumenti provided that Brown would obtain the necessary insurance. While the testimony is conflicting regarding the April 28 discussion,[5] there is sufficient evidence in the record that supports the trial court's finding. It is undisputed that at the time Diumenti delivered possession and control of the airplane to Brown on April 30, thereby creating the bailment, he clearly stated that Brown was not to fly the plane until he was insured to do so. Brown accepted possession of the airplane with full knowledge that a condition of his possession was that the necessary insurance be procured before flying the plane. This exchange was sufficient to create a mutually agreed upon express bailment provision regarding the insurance.[6] Accordingly, the trial court's finding that "there was an express agreement between the parties that defendants would

narily present in a bailment case.... [I]t would be unreasonable to require the bailor to prove negligence specifically when the bailee has exclusive possession of the facts and the means for ascertaining them.... [Nonetheless,] this inference of negligence will not arise in those cases where the bailor shows by his pleading or proof that he had the same opportunity to ascertain the facts as did the bailee. It is a rule based on necessity and will not apply if the necessity does not exist.

*Sumison,* 132 P.2d at 686–87 (citations omitted).

5. The trial court had before it testimony from all parties who were present at the April 28 meeting. Although Ritter, Mrs. Ritter, and Brown testified that Diumenti had said he would get the waiver to add Brown to Diumenti's insurance policy, Diumenti testified that Ritter and Brown agreed

to undertake the necessary steps to obtain the insurance to cover Brown. The trial court is in the best position to observe the witnesses as they are testifying and to judge their credibility. *See American Vending Servs., Inc. v. Morse,* 881 P.2d 917, 927 (Utah App.1994) ("The trial court is in the most advantaged position to weigh and balance the evidence during trial."), *cert. denied,* 890 P.2d 1034 (Utah 1995). Obviously, the trial court found Diumenti's testimony more credible than that of Brown, Ritter, and Mrs. Ritter, and it is within the scope of its duty to do so.

6. Not only was this April 30 conversation between Diumenti and Brown sufficient to create an express provision relating to insurance, but the April 28 discussion supports the parties' intent to include in the bailment an express provision regarding insurance.

obtain insurance to cover the airplane during the time the airplane was in the defendants' possession" is not against the clear weight of the evidence nor are we left with the " 'definite and firm conviction that a mistake has been made.' " *McPherson,* 830 P.2d at 304 (citation omitted).[7]

## CONCLUSION

After reviewing the record, we conclude that there is sufficient evidence to support the trial court's findings that there was a bailment between Diumenti and Brown which included an express term that Brown would not fly plaintiffs' airplane until Brown had procured the necessary insurance under Diumenti's policy. Furthermore, because the implied in law bailment contract was modified by the parties to include an express provision, plaintiffs need not prove negligence, but need only prove the breach of the agreed upon express provision. Accordingly, the trial court's ruling is affirmed.

JACKSON, J., concurs.

WILKINS, Judge (dissenting):

I respectfully dissent. I concur with the well reasoned opinion of the majority right up to the point where they find an express modification of the bailment agreement between Diumenti and Brown regarding insurance for the airplane. I find no support in the record for any such express agreement, and would reverse on that basis.

While accepting the findings of the trial court regarding the meeting between the various parties on April 28, 1984, it is clear that the discussions were focused on the lease agreement, not the temporary bailment by which possession was delivered on April 30, 1984. It is also clear from the record,

that although Brown participated in the discussion about insurance, it was the lessee of the airplane, and not Brown, who was undertaking the contractual obligation to assure adequate insurance was in place.

The fact that upon delivering the keys, and thereby possession of the airplane, Diumenti specifically told Brown that he, Diumenti, did not expect the airplane to go anywhere until there was insurance, does not make Brown a party to any contract regarding insurance for the airplane. Diumenti testified that he did not believe at any time that he was entering into a contract with Brown.

There is absolutely no evidence in the record that Diumenti and Brown entered into a valid agreement to modify the obligations which would otherwise arise from the relationship of bailor and bailee that is "actually a part of the contract of bailment and is expressed in clean and unmistakable language", and in which there is "actual assent to the conditions modifying the bailee's liability growing out of the contract of bailment." *Allen v. Southern Pac. Co.,* 117 Utah 171, 213 P.2d 667, 668 (1950).

Brown did not assent to "modification" of the bailment agreement. The only testimony before the trial court regarding the bailment agreement is that Diumenti made a statement regarding insurance at the time of delivering the keys to the airplane. Brown's acceptance of the keys under those factual circumstances amounts to no more than accepting them for his employer, as he was expected to do. It did not make Brown a party to anything.

---

**7.** At oral argument, Brown's counsel charged that at the close of plaintiffs' case before the trial court plaintiffs' counsel stated "I think there was *no* collateral agreement with Mr. Brown that the plane wouldn't be flown unless he had ... the appropriate rider from the insurance company." (Emphasis added.) Brown asserts that this statement clearly supports his argument that there was no express provision to a bailment contract. Plaintiffs' counsel, on the other hand, claims that the statement was "I think there was *a* collateral agreement with Mr. Brown that the plane

wouldn't be flown unless he had ... the appropriate rider from the insurance company." (Emphasis added.)

The court has had the benefit of two transcripts of this statement, an original computer generated transcript containing the word "no," and an original partial transcript containing the word "an." Even if the computer generated transcript was correct, it is clear that plaintiffs' position is that there was a collateral agreement between Brown and Diumenti regarding insurance.